Jackson
v.
Johnson.

JACKSON, *ex dem.* SWARTWOUT and wife, *against* JOHNSON.

THE SAME *against* BRAINARD. (*a*)

A., in 1787, was vested by act of the legislature, with certain lands in fee, in trust for B., a female infant, and others, he having power to sell, &c.,

EJECTMENTS, to recover an undivided fourth of part of lots 5 and 10, in Colden's tract, in Croghan's patent, in the town of Burlington, in Otsego county, tried at the circuit in that county, September, 1823, before NELSON, C. Judge.

It was admitted that Cadwallader Colden and David Colden were, on the 15th of March, 1770, seised of 1483 acres of land, of which the premises in question were a part.

On the 12th May, 1790, he contracted by his attorney, to sell a farm to R., on his (R.'s) paying, &c.; and R. took possession under the contract, and began to improve the land; but soon assigned his contract to J., who, in 1790, succeeded him in the possession. B., the female *cestui que trust*, being still an infant, intermarried with C., April 7, 1792; and on the 5th November, of the same year, A. conveyed all the trust property, (including the land contracted for by R.,) to the *cestuis que trust.* Afterwards, December 13th, 1793, A., the trustee, by his attorney, conveyed the fee to J. During the same year, but at what time in the year it did not appear, B. had issue a son born alive, by her husband C.; and afterwards, September 30th, 1795, a daughter. B. died in July, 1797, having attained the age of 21, C., her husband, surviving. The son died intestate and unmarried in 1816; and his father, the husband of B., died in 1817, the daughter surviving. On ejectment, *ex dem.* the daughter against J., who had held claiming title, from the date of his deed, of December 13, 1793; *held, first,* that his possession *was not* adverse, so as to avoid the deed to the *cestuis que trust,* for champerty or maintenance; *secondly,* that his possession *was* adverse, from the date of his deed; but *thirdly,* as B., the owner, was then under disability, both of infancy and coverture, the statute of limitations should not run against her, till both those disabilities were removed; that she, or her heirs, should have, in any event, ten years after the removal of her disabilities, and at least 20 years after the adverse possession commenced, within which to enter or bring ejectment; and *fourthly,* that C. was tenant by the curtesy, whether the adverse possession or disseisin took place before or after issue of the marriage; and *fifthly,* that this suspending the right of entry or action, of her heirs, they had yet ten years, within which to bring ejectment, after the estate by the curtesy terminated by the death of her father in 1817.

*It seems,* that a conveyance in fee, to one, in trust for others, coupled with power to sell or mortgage, for the purpose of reimbursing to the trustee, certain moneys to be expended about the trust property, does not carry the possession or legal estate to the *cestui que trust,* by virtue of the statute of uses.

*It seems,* that where A. contracts to convey land to B., on certain conditions being performed, and afterwards conveys accordingly, this is evidence that the previous conditions were performed by B.

A possession and claim of land, under an executory contract of purchase, is not such an adverse possession as will render a deed from the true owner void for champerty or maintenance; nor is it such an adverse possession as, if continued for 20 years, will bar an entry, within the statute of limitations; and especially, it is in no sense adverse, as to the one with whom the contract is made.

To constitute an adverse possession, it must not only be hostile in its inception, but the possessor must claim the *entire title;* for if it be subservient to, and admit the existence of a higher title, it is not adverse to that title.

Yet, *it seems,* that where one enters under a contract for a deed with A.; and afterwards takes a deed from B., his possession from this time is adverse to A., and if continued for 20 years, will bar A.'s entry.

(*a*) These causes were decided in August term, 1825.

The plaintiff gave in evidence, a deed from Cadwallader Colden to David Colden, dated December 12, 1775; and by which lots 5 and 10, with others, were released to David Colden.

It was admitted that David Colden's name was in the act of attainder of 1779.

The plaintiff's counsel then read in evidence, an act of the legislature, passed April 21, 1787 ; the first section of which vested the estate of David Colden, not already sold, in Cadwallader Colden, his heirs, executors and administrators, *in trust for the children of David Colden*, and au-

---

The disability which entitles a party to the benefit of the *proviso* in the statute of limitations, must exist when the right of entry or action first accrues ; and if several disabilities exist together, the statute does not begin to run until the whole are removed.

If several disabilities exist together, in the owner of an estate, as infancy and coverture, when the adverse possession commences against her, she, or if she die, her heirs, have at least ten years within which to enter or bring an action, after both disabilities are removed ; and they are entitled to full 20 years, for this purpose, from the time when the adverse possession commenced. Thus, if the disabilities should be removed within three years after the adverse possession commenced, they would not be barred under 17 years. So if the disabilities should not be removed till 20 years after the adverse possession began, they would still have 10 years to enter or bring ejectment. And thus, 30 years adverse possession, or more, may be necessary to bar an entry or ejectment.

And though these disabilities be removed, if the right of entry or ejectment be suspended by the intervention of a particular estate, existing at the time of their removal, as a tenancy by the curtesy, *initiate*, during their existence, and *consummate eo instanti* that they determine, the owners still have 10 years to enter or bring ejectment, after the particular estate determined.

Cumulative or successive disabilities, such as are mentioned by the *proviso* in the statute of limitations, are not allowed to stand in the way of the statute ; but the intervention of a particular estate is not within the rule. Thus, if the disseisin happen during infancy and coverture, and afterwards, before or at the determination of these disabilities, an estate by the curtesy intervene, it is not within the rule ; but the rightful owner shall have yet 10 years to enter or bring ejectment, after the estate by the curtesy is determined.

The statute of limitations does not run against remaindermen or reversioners, during the continuance of the particular estate. It was aimed at those who may be guilty of laches in omitting to enter, or bring actions ; which cannot be said of remaindermen and reversioners, who have no right in law to do either. And this, whether the particular estate exist at the time of the disseisin, or arise subsequently, provided that in the latter case it be immediately preceded by a disability or disabilities within the *proviso* of the statute.

Four things are necessary to constitute a tenancy by the curtesy : marriage, seisin of the wife, issue, and death of the wife. But it is not necessary that seisin and issue should concur together at one time ; and, therefore, if the wife become seised of lands during the coverture, and then be disseised, and then have issue, the husband shall be tenant by the curtesy of these lands ; and on his wife's death, may enter as such ; and, during her life, he is called tenant by the curtesy initiate. So if the wife become seised after issue, though the issue die before her seisin.

As to what shall amount to a seisin ; it is enough that the wife have a tenant in possession, who holds at will, or who entered under a contract to purchase her estate.

And *it seems*, that the rule which requires actual seisin, applies only to cases where it is not complete till entry ; as where the estate comes to the wife by descent or devise ; not where it comes by purchase, and is transferred into possession by the statute of uses.

The lessor of the plaintiff sworn as a witness, at the circuit, without objection, in order to prove the loss of a deed.

thorized Cadwallader Colden to bring actions for the reco-
very of the property in his own name.

The second section was in the form of a *proviso*, that
Cadwallader Colden should pay into the treasury, in three
months, such sums as the land should be appraised at, and
deliver to the surveyor general certain papers belonging to
his office, and make a certain affidavit.

The third section, directed the commissioners of forfei-
tures, to have the lands mentioned in a certain location, of
the lands of David Colden, made by Cadwallader Colden,
appraised ; and authorized Cadwallader Colden, when the
terms of the act should be complied with, to sell or mort-
gage enough of the land to repay himself any money he
might have advanced.

The plaintiff's counsel then read in evidence, an act of
the legislature, passed January 17, 1789, by which the
time of payment to the estate was extended.

He then read in evidence, a copy of a paper from the
comptroller's office, a certificate from the surveyor general
and an affidavit made by Cadwallader Colden, before the
Chief Justice, by which it appeared that the conditions of
the act of 1787, had all been complied with.

He further read a deposition of Cadwallader D. Colden,
taken by consent, by which it appeared that David Colden
died in the year 1784, leaving five children, viz. Cadwalla-
der D. still living, Alice Criste, Mary, Elizabeth Anne, and
Catharine.   Alice Criste was born in 1768, and died intes-
tate, in 1788, without having been married.   Mary was
born in 1770, married J. O. Hoffman, and died in 1797, leav-
ing children.   Elizabeth Anne was born in 1774, was mar-
ried to E. W. Laight in 1799, and died intestate, in 1800,
without having had a child.

That Catharine, the fourth daughter, was born November
20th, 1775, married Thomas Cooper, April 7th, 1792, and
died intestate, in July, 1797, leaving her husband, Thom-
as Cooper, and a son Colden, and a daughter, Alice Anne,
by him, living.

That Alice Anne was born September 30th, 1795, and
married 22d December, 1814, to Samuel Swartwout, who,
with Alice Ann, his wife, are the lessors of the plaintiff.

That Colden Cooper was born in 1793, and died intestate without having been married, on the 21st of November, 1816. Thomas Cooper died in November or December, 1817.

It also appeared from this deposition, that Cadwallader Colden, the trustee, under the act of 1787, on the 5th November, 1792, gave the deponent (the son of David Colden) a deed for his undivided fourth of the trust lands, (which deed was produced,) and also that *Cadwallader Colden, on the same day executed to Catharine Cooper, the fourth daughter of D. Colden, a deed for her undivided fourth part.* Also that Catharine Cooper's deed was, in all respects similar to the deed produced. That these deeds were intended as a full execution of the trust.

The witness recollected the place where the deeds were signed. It was at Mr Hoffman's. The parties assembled there for the purpose. A copy of this deed was annexed to the case.

The deposition also stated, that long previous to the execution of these deeds, and as early as 1790, Cadwallader Colden, the trustee, had been paid for all his advances, out of moneys of the children of David Colden, received from England ; that none of the trust lands were sold to raise this money, or for the re-payment of any money raised for this purpose ; that Cadwallader Colden never pretended to have any claims on those lands after this money from England was received and paid.

The money from England was received in the months of February and June, 1790. In the deed from Cadwallader Colden, the trustee, to Cadwallader D. Colden, there was an exception, as to the Otsego lands, in the covenant, that he had done nothing to incumber or impair the title. This, (as appeared from the deposition,) as the deponent, understood, was because some of these lands had been sold by William Cooper, of Cooperstown.

S. Swartwout, the lessor, was sworn as a witness, and proved the loss of the deed from Cadwallader Colden the trustee, to Catharine Cooper.

VOL. V.                    11

It was admitted that the defendant in the first cause, was in possession of part of No. 10, and the defendant in the second cause, of part of No 5, and *lease, entry and ouster* in both causes were confessed. The plaintiff then rested.

The defendants then gave in evidence a power of attorney from Cadwallader Colden, the trustee to William Cooper, of Cooperstown, dated January 30th, 1790, authorizing William Cooper to sell his (Cadwallader Colden's) lands, and also any lands Cadwallader Colden was intrusted with.

The defendant in the first cause then read in evidence an article or contract from William Cooper, as attorney for Cadwallader Colden, to one Matthew Rogers, dated 12th May, 1790, by which it was agreed, that if Rogers paid a certain sum of money by the year 1800, with interest annually, he should receive a deed for the whole of No. 10. This article is more particularly recited in the opinion of Sutherland, J.

The defendant in the first cause proved that he, as assignee of the contract to Rogers, went on to No. 10, in 1790 ; that he built a log-house that summer, and cleared a part of it ; and had ever since been in possession, claiming it as his own. He also gave in evidence a deed in fee from William Cooper, as attorney for Cadwallader Colden, to him, dated December 13th, 1793, for the premises in question, given in pursuance of the article.

The defendant in the second cause gave in evidence a similar article to one T. Morse, and proved that one Giles, as assignee of Morse, entered in 1790, and cleared a part, and built a log-house ; that he continued there till 1794, and then sold to the defendant, who had continued in possession ever since, claiming the land as his own. He also gave in evidence a deed in fee from William Cooper, as attorney for Cadwallader Colden, to himself, for the premises in question, dated January 6, 1795, executed pursuant to the article to Morse.

Verdicts were taken for the plaintiff for a fourth of the premises in question, subject to the opinion of the Court upon the above case.

*J. O. Morse*, for the plaintiff, made the following points.

1. The plaintiff has shown a perfect title in the lessors,

2. The defendants' possession did not become adverse, till after the death of Thomas Cooper, who was tenant by the curtesy.

1. Title is shown in the lessors; for it is proved, *first*, that in 1770, D. Colden and C. Colden were seised in fee. *Secondly*, that in 1775, C. Colden released to D. Colden half the tract of which the premises in question are part. *Thirdly*, although the lands of David were forfeited by the act of 1779, the act of 1787 vests them in Cadwallader Colden, in trust for the children of David. *Fourthly*, in 1792, C. Colden, the trustee conveyed to Catharine Cooper, one of the children of David, her share, of which the premises in question are part. *Fifthly*, Catharine Cooper died in 1797, leaving her husband, Thomas Cooper, survivor, who was tenant by the curtesy. *Sixthly*, Thomas Cooper died in 1817, and the estate of Mrs. Swartwout then vested, her brother Colden having previously died.

2. The possession of the defendants, under the contracts to Rogers and Morse was not adverse. (*Jackson* v. *Camp*, 1 Cowen's Rep. 605.

It cannot be said that the deed from C. Colden to Mrs. C. Cooper, in 1792, was void for champerty. The case of *Jackson* v. *Bard*, (4 John. 230,) is decisive on this point. The cases are exactly parallel. In this case of *Cooper* v. *Stower*, (9 John. 331,) it was decided that a contract to sell and convey, does not even give a license to enter; but it was agreed that till the contract was executed by all the purchasers, and a certain bond given, no timber should be cut; and the Court say, that with this addition, the most that could be implied was a permission to enter and occupy as tenants at will, till the consideration money was paid.

The defendants in these causes, then, while occupying under the contracts to Morse and Rogers, the consideration money not having been paid, are to be considered, at most, no better than tenants at will, or *quasi* tenants at will, to C. Colden, or to his *cestuy que trust*, Mrs. Cooper.

Their possession, then, did not destroy the operation of the deed to Mrs. Cooper, in 1792; and if this was an operative and valid deed, it is not necessary to inquire whe-

ther the trust created by the act of 1787 was executed by our statute of uses.

But it may be said, perhaps, that the defendants' possession became adverse when they took their deeds, the first in 1793, and the second in 1795.

For the sake of the argument, we are willing to admit that their possessions *did*, in their nature, become adverse; but it is denied that they began to *operate* against Mrs. Cooper.

We admit that there cannot be a succession of disabilities. We say, in the language of Kent, Chancellor, in *Demarest* v. *Wynkoop*, (3 John. Ch. Rep. 136,) "If several disabilities exist together at the time the right of action accrues, (or at the time the adverse possession commences,) the statute does not begin to run until the party has survived them all."

In our cases, Mrs. Cooper was, at the date of the defendants' deeds, laboring under two disabilities, infancy and coverture.

In 1796 she became of age, and her disability as an infant, perhaps, then ceased ; but her disability, as a feme covert, continued as long as she lived. This disability she did not *survive*. The statute, therefore, did not begin to run against her.

This is undoubtedly the true doctrine on this subject; and there is nothing that militates against it, except it be a mere dictum of Chief Justice Swift, of Connecticut. (2 Conn. Rep. N. S. 33.)

The rule laid down by Chancellor Kent, is supported by Chambre, J. in *Cotterell* v. *Dutton*, (4 Taunton, 830.)

If, then, the statute did not begin to run against Mrs. Cooper in her lifetime, the intervention of her husband's life estate, as tenant by the curtesy, would further prevent it, so that in fact it never began to run against Mrs. Swartwout, till after the death of her father.

A contrary rule would be the height of injustice. It would compel the reversioner to bring his suit during the continuance of the particular estate, which is impossible. (*Jackson* v. *Schoonmaker*, 4 John. Rep. 402. 7 East, 311.)

If the statute does begin to run, the *proviso* is a nullity. ' If there be no right to enter during a particular estate, in such a case, the statute never attaches." (Ballantine on Lim. 49.)

Possibly, however, it may be contended that Mrs. Cooper was never seised of these lands, in such a manner as to constitute her husband a tenant by the curtesy.

The rule which *now* exists on this subject is, that there must be a constructive possession in fact. (*Jackson* v. *Sellick*, 8 John. Rep. 271.)

In 1792, C. Colden conveyed these lands to Mrs. Cooper. The persons then on the lands, as has been shown on the authority of *Cooper* v. *Stower*, (9 John. 331,) were her tenants at will, or *quasi* such. She could have maintained trespass against them on the authority of that case. She had, therefore, a constructive seisin in fact.

In *De Grey* v. *Richardson*, (3 Atk. 469,) curtesy was allowed in a case precisely like these. In *Sterling* v. *Pennington*, (7 Vin. 149, pl. 11,) the wife was *denied* possession during the coverture, and yet curtesy was allowed.

Again : it will not be pretended but that from the year 1787, Mrs. Cooper had a trust estate in these lands. The lands were then wild. An actual entry was not necessary. (*Jackson* v. *Sellick*, 8 John. Rep. 271.)

A husband shall be tenant by the curtesy of a trust estate of freehold in the wife. ( *Watts* v. *Ball*, 1 P. Williams, 108. Cruise's Digest, title XII, *Trust*, ch. 11, sec. 8, 9. *Chaplin* v. *Chaplin*, 3 P. Williams, 229. Comyn's Digest, *Estate*, (D. 1.)

*I. Seelye* and *R. Campbell*, contra.

1. If the act of 1787 vested in the children of D. Colden, by the statute of uses, an estate in fee, or if it vested by the payment of the money to the trustee in 1790, the statute of limitations began to run against Mrs. Cooper, before her marriage.

Giving the deeds to the defendants, is full evidence that every part of the contracts was performed. (*Jackson* v. *Camp*, 1 Cowen's Rep. 605.)

Where a possession is taken under a contract, and the contract consummated by a deed, the possession is adverse from the first. The possession being adverse in 1790, operated on the rights of Mrs. Cooper, then an infant.

The proviso in the statute of limitations saved her rights until *that* disability was removed ; but cumulative disabilities are not within the proviso. (18 John. 40. 3 John. Ch. Rep. 129, 138.) 4 Taunt. 826. 6 East, 80. 4 Day, 298. Plowden, 353. 4 Mass. Rep. 182. 4 T. R. 300. 2 Conn. Rep. 27.)

If title first accrue to an infant 16 years old, he is not within the proviso, nor obliged to bring his action in ten years after he comes of age ; for in all cases a person has twenty years.

If Mrs. Cooper was seised in 1790, the statute began to run against her. She was of age in 1796. She and her heirs had 15 years to bring an action. The statute having begun to run, no subsequent disability can stop it. (2 Conn. Rep. 27, 33, per Swift, Ch. J.)

2. But if Mrs. Cooper was not seised till the date of the deed to her from C. Colden, in 1792, this deed gave her no right ; for it was void for champerty. At the date of this deed, the defendants had been three years in possession under the contracts. C. Colden could sell nothing but a right of action.

If Mrs. Cooper would have been compelled to bring an action to get possession, the deed must be void ; for such an action cannot be sold. It is directly in face of the statute, and void at common law. (1 Rev. Laws, 172. 3 John. Cas. 101. 2 John. Cas. 41, 58. 5 John. Rep. 489. Co. Lit. 214. 11 John. Rep. 91. 9 id. 55.) The lessors, therefore, showed no right.

3. The adverse possession certainly began to operate on the execution of the deeds to the defendants. Mrs. Cooper was then an infant and covert. She was of age in 1796, and died in 1797. She had 20 years from the date of the defendants' deeds, and her heirs ten years from her death.

It does not appear from the case, that Mrs. Cooper had a child at the date of Johnson's deed, (December, 1793.) Of course, Thomas Cooper was not then tenant by the curtesy.

The case states that Colden Cooper was born in 1793 ; but the time in that year is not stated.   The tenancy by the curtesy must have existed when the adverse possession commenced.   It cannot arise during the existence of an adverse possession.

4. When the adverse possession commenced in Johnson's case, T. Cooper had not acquired even an inchoate right by the birth of a child.   His life estate did not commence till the death of his wife in 1797, if at all.   (1 Binney, 10.)

The *dictum* that the statute does not begin to run, in such a case as this, is not correct.   It can only be true, that the statute never runs out, and forms a bar during that disability, nor until ten years afterwards.   (Opinion of Ch. J. Swift, 2 Conn. Rep. 27, 33.)

The statute did, therefore, begin to run, and the life estate of tenancy by the curtesy, not being in existence when the adverse possession commenced, will not stop the statute.

This, therefore, distinguishes the case from those of *Jackson* v. *Schoonmaker*, (4 John. 390,) and *Jackson* v. *Sellick*, (8 John. 262.)

5. The decisive answer to the plaintiff's claim is, that Thomas Cooper never was tenant by the curtesy.   Here was no seisin in deed, and in fact.   This is necessary.   (1 Inst. 29, *a*.   1 Cruise, 107, s. 10.   Perkins, 464, 470.)

There has been no relaxation of this rule, except where lands are wild, as in *Jackson* v. *Sellick*, (8 John. 265.)   If, however, T. Cooper and wife should be deemed  seised in law, that seisin was in trust for the defendants ; and the husband of a female trustee cannot be tenant by the curtesy. (1 Madd. Ch. 268.   1 Cruise's Dig. 471, title XII, *Trust*, ch. 1, sec. 30.)

Where articles are entered into for the purchase of an estate, a trust immediately results to the purchaser.   (3 John. Ch. Rep. 316.   1 Madd. Ch. 389, 390, 391.)

*D. Cady*, in reply.   It cannot be necessary to discuss the questions, whether the act of the 7th of April, 1787, created such a trust in C. Colden, as was executed in the children of D. Colden, by the statute of uses ; nor, whether they

became seised of the legal estate in 1790, when all the money which their trustee had advanced on account of the trust estate, was repaid. It is enough to show, that it was vested in them by their trustee on the 5th of November, 1792.

The husband of Mrs. Cooper, the *cestui que trust*, could not, even by his dissent, make void a deed executed by the trustee in pursuance of the trust. But there is no pretence that he dissented.

In 1 Inst. sec. 1, (3 *a*) it is said, " a feme covert is of capacity to purchase of others, without the consent of her husband ; but the husband may disagree thereto and divest the whole estate ; but if he neither agree nor disagree, the purchase is good." The law, then, requires, that the husband should do an act clearly manifesting his dissent to the purchase.

What are the facts, which are supposed to prove the adverse possession upon which the defendants rely for a defence ? Were it conceded, that on the 13th December, 1793, the possession of the defendants became adverse to all the world, and so continued from that time to the present, it would not furnish them with the shadow of a defence. Unless their possession was commenced in hostility to the title of C. Colden, and continued adverse down to the 5th November, 1792, when he executed a deed to Mrs. Cooper, his *cestui que trust*, no one of the objections taken by the defendant's counsel, and founded upon adverse possession can be supported.

The Court say, in the case of *Smith* v. *Burtis*, (9 John. 180,) " a possession for ever so long a time, stripped of the circumstance that it is accompanied with the claim of the *entire title*, will not amount to an adverse possession, barring those who have the real and legitimate title." The fact of possession and the *quo animo* it was commenced or continued, are the only tests ; it must necessarily be *exclusive of any other right*." In the case of *Brandt* v. *Ogden*, (1 John. 158,) the Court say, "in order to bar the recovery of a plaintiff who has a title, by a possession in the defendant, *strict proof* has always been required, not only that the first possession was taken un-

der a claim *hostile to the real owner ;* but that such hostility has continued on the part of the succeeding tenants.

In these cases, the Court were speaking of such an adverse possession, as would, if continued twenty years, bar the person having title ; but the possession which will make void a deed executed by a person having the title, must be of the same character. Suppose Johnson had remained in possession twenty years, as assignee of the contract to M. Rogers ; would that possession have protected him against an ejectment brought by C. Colden ? Could he have alleged that he entered claiming the fee in *hostility* to the title of C. Colden ? So far from this, C. Colden, on the trial of such ejectment, need not have given any other evidence of his title, than the contract to Rogers, and proof that the defendant entered and claimed as assignee of that contract. (*Jackson* v. *Dobbin*, 3 John. 223. *Jackson* v. *Reynolds*, 3 Caines, 444.)

The counsel for the defendant have introduced what is deemed a new *test*, in order to determine whether a possession be or be not adverse. They assume that if the defendant had committed such an ouster or disseisin as would compel C. Colden, or the children of D. Colden, to bring an action to get possession, then the deed must be void ! Indeed ! is this the rule ? A tenant at will or at sufferance, if he be obstinate, cannot be turned out of possession but by action ; and is it to be taken for granted, that he will be obstinate ; and that his possession renders it unlawful for his landlord to sell the estate ? The law requires strict proof in order to show that a possession is adverse. Without such proof, the possession is always presumed to be in subordination to the title, and to be held for the rightful owner. (9 John. 166, 7. 3 John. Cas. 124.)

The case of *Jackson* v. *Bard*, (4 John. 231,) bears directly upon the point under discussion ; and in the case of *Jackson* v. *Camp*, (1 Cowen, 610,) the Court say, " that the agreement (to purchase) had not placed Dyer in a situation to commence holding adversely, until he had performed the condition." When Johnson, as the assignee

of the agreement with Rogers, entered, it was altogether uncertain whether he ever would perform the conditions upon which the agreement would take effect, and there is no evidence in the case that he ever did pay a cent before the deed of the 5th November, 1792, to Mrs. Cooper. He did not enter claiming *title* in himself, but claiming the title to be in C. Colden, from whom he intended to acquire it.

A deed given in December, 1793, by C. Colden, can furnish no evidence that the article of sale was performed against his grantee, in a deed given in November, 1792. Beside, the agreement was for the conveyance of 525 acres of land; and the deed is for but 100 acres. It is idle, therefore, to say that the deed was given in pursuance of the contract, or that it furnishes evidence that the contract was performed. It is rather evidence, that the agreement with Rogers was abandoned, and a new agreement substituted in its stead. It cannot, however, be important whether the defendant did, or did not perform the agreement under which he entered. Suppose he had regularly paid the interest up to the time when C. Colden conveyed to Mrs. Cooper, would such payment have rendered his possession adverse, so that C. Colden could not give a valid deed to his *cestui que trust* ? If C. Colden had been seised of the land in his own right, and covenanted to convey it to the defendant in the year 1800; and the defendant had paid the interest to November, 1792, C. Colden might have been considered a trustee for the defendant; and had C. Colden then given a deed to another, the deed would have passed a valid title at law, but the purchaser might have been charged with the trust, and compelled in a Court of Equity to convey the land to the defendant. But in this case, C. Colden was trustee for the children of D. Colden, before he made any agreement with the defendant's assignor, Rogers. There is good reason for saying that the defendant purchased with notice of that trust. The papers which the defendant would have to produce, to show his own title, would prove the trust. (*Hamilton* v. *Royce*, 2 Sch. & Lef. 315.) But whether he is chargeable with notice of the trust or not, Mrs. Cooper had the first equity, and the first title at law.

But suppose the agreement made by Wm. Cooper with Rogers, was a valid agreement, as against the children of D. Colden; neither C. Colden nor his attorney could, after he had conveyed the estate to his *cestui que trust*, give a valid deed to Johnson. The defendant should have looked to them for a title.

The statute against champerty and maintenance has no application to a deed given by a trustee to his *cestui que trust*, in pursuance of the trust. Their titles constitute but one, and it must be immaterial, as to other persons, whether their titles be united in one person or not. There can be no danger, that a *cestui que trust* will purchase in his own title *at an under value*, for the purpose of litigation or oppression. The intent of the statute, was " to restrain all persons from transferring any disputed right to strangers." (3 Bac. Abr. 326, *Maintenance*.) " Whoever has a reversion or remainder vested in him, may lawfully take any conveyance which will strengthen his estate." May not a *cestui que trust* do the same ?

Why did the execution of that deed to Mrs. Cooper give the character of hostility to the defendant's possession ? If the defendant, when that deed was executed, was in possession, admitting the title of C. Colden, and intending to purchase that title, he did not commence to hold in hostility to it, the moment it was transferred to Mrs. Cooper. No ; he continued to hold under the same title, as her tenant at will.

To support their branch of the argument upon the statute of limitations, the defendant's counsel are driven to the necessity of insisting, that T. Cooper was not tenant by the curtesy. So confident are we, that T. Cooper was tenant by the curtesy, and that during his life, the descent to the children of Mrs. Cooper was suspended, that I do not deem it necessary to examine whether the construction put upon the statute of limitations by the defendant's counsel, be or be not correct.

The law is not, that to make the husband tenant by the curtesy, the seisin of the wife must be after the birth of issue. (1 Cruise's Dig. 107, chap. 1, sec. 11. id. 113 s.

25.) The time when the seisin of the wife commences, whether before or after issue had, is immaterial. Thus, Lord Coke says, (1 Inst. 30, *a*,) "If a man takes a woman seised of lands in *fee* and is disseised, and then has issue, and the wife dies, he shall enter and hold by the curtesy. So if he has issue before the descent of lands upon his wife." These authorities are enough to show that it is wholly immaterial whether Colden Cooper was born before, or after the deed given to the defendant. Nay; if he had never been born, it would not have varied the right of the lessors.

The question is, was Mrs. Cooper, at any time during the coverture, so seised as to entitle her husband to be tenant by the curtesy? This question must be answered in the affirmative, unless Cadwallader Colden was so disseised, that he could not convey a legal title to his *cestui que trust*, Mrs. Cooper, on the 5th November, 1792. That he was not so disseised, has, it is believed, been sufficiently shown.

It requires the same seisin in the wife, to enable her heir to take by descent, as it does to entitle her husband to be tenant by the curtesy. (1 Cruise's Dig. 112, ch. 1, s. 24.) A seisin in law is said not to be sufficient for either purpose. A seisin in law, as distinguished from a seisin in deed, applies only to cases in which the title of the person claiming is not complete till entry. Thus, a person who claims as heir or devisee, has only a seisin in law, before entry: and if before entry, a stranger enters, it is an abatement, not a disseisin. (3 Bl. Com. 167.) "In descents of land which are cast upon the heir by the act of the law itself, the heir has not *plenum dominium*, or full and complete ownership, till he has made an actual corporal entry into the lands; and if he die before entry made, his heir shall not be entitled to take possession; but the heir of the person who was last actually seised." (2 Bl. Com. 312.) But when a person claims under a deed or conveyance, to which effect is given by the statute of uses, "he is put at once into corporal possession of the land, without ever having seen it, by a kind of parliamentary magic." (2 Bl. Com. 338.) In this case, Mrs. Cooper did not claim as heir, devisee, or feoffee, and there was no necessity that

she should enter in order to enable her heirs to take, or her husband to be tenant by the curtesy. She claimed either under a legislative grant, or under a deed from her trustee in neither of which cases was entry necessary to give *plenum dominiium.* The case put by Lord Coke, (1 Inst. 29, *a.*) to show that the husband shall not be tenant by the curtesy, where the wife has only a seisin in law, is where lands descend to the wife, she has issue, and dies before entry. But the literal construction of this rule has been departed from, both in England and in this country. (1 Cruise's Dig. 110, sec. 16.)

In the case of *Jackson* v. *Sellick,* (8 John. 262,) the Court held, that as to lands, the possession followed the title, and that to entitle the husband to be tenant by the curtesy, it was not necessary that he should enter during the coverture. In the case of *Jackson* v. *Howe,* (14 John. 405, 406,) the Court held, that as to wild lands, the heir need not enter in order to become the stock from which a descent might be claimed.

Here the possession of the defendant, was the possession of Cadwallader Colden, which was transferred to Mrs. Cooper, and she had a right to consider the defendant as holding for her. At all events, she had a right so to consider him, till he took a deed in 1793. And were it conceded that she and her husband were then disseised, and so continued till her death, it would present the very case, in which Lord Coke says, that the husband " shall enter and hold by the curtesy."

SUTHERLAND, J. The lessors of the plaintiff made out a clear paper title to the premises in question ; and are entitled. to recover, unless the deed from Cadwallader Colden to Mrs. Cooper, of the 5th November, 1792, was void under the statute of champerty and maintenance, or their rights barred by adverse possession.

The questions which arose in the suit of the same lessors against Cole,(*a*) whether the trust in favor of the heirs of David Colden, created by the act of 1787, was executed by the statute of uses, or if not, whether a conveyance from the trustee to the *cestuis que trust* was to be presumed, are excluded from this case ; because an actual conveyance

(*a*) 4 Cowen's Rep. 587.

ALBANY,
Oct. 1825.
_____
Jackson
v.
Johnson.

from their trustee is proved; and the first question which arises is, whether that conveyance was valid. It bears date on the 5th November, 1792; and it is contended by the defendant that it was void; because at the time of its execution, the premises in question which, among others, it purported to convey, were in the actual possession of the defendant, under a contract of sale made between Cadwallader Colden, by his attorney William Cooper, and one Matthew Rogers, on the 12th day of May, 1790. It appears that the defendant, as the assignee of that contract, entered upon a *part* of the premises which it contains, in the summer of 1790, made a small clearing and erected a log house; that on the 13th day of December, 1793, he took a deed from William Cooper, as the attorney of Colden, and has remained in the possession down to the time of the trial.

This, it is said, was an adverse possession from the time of the defendant's entry in 1790; but if not so, then, that it became adverse upon the receiving of his deed in 1793.

So far as the question of maintenance is concerned, it is not material whether the defendant's possession became adverse or not, upon receiving his deed in 1793. If the lands conveyed to Mrs. Cooper by the deed of November 5th, 1792, were not *then* held adversely to the grantor, the deed was not *void* on the ground of champerty and maintenance. The adverse possession must exist at the time of the conveyance, in order to avoid it. If the defendant's possession was not then adverse to Cadwallader Colden, under whom he entered, it was in judgment of law the possession of Colden; and his conveyance would not be affected, either by the terms or the principles of the act against champerty and maintenance. In the view of that act, it would be valid, whatever might be its legal effect and operation.

Was the defendant, then, on the 5th of November, 1792, in possession of the premises in question, holding them adversely to Cadwallader Colden? By the contract with Rogers, he was to have a deed for his land from Colden upon his paying him £262 10, with interest, annually, on or before the 12th day of May, 1800. The contract does not, in terms, authorize Rogers to enter upon the land. It

contains no words of present demise. It recites that Rogers, by his obligation, bearing even date with the agreement, was indebted to Colden in the sum of £262 10, and covenants that in consideration thereof, the said Colden will convey to the said Rogers, the premises mentioned therein, if the said Rogers shall pay the said sum of £262 10, with interest, annually, on or before the 12th day of May, 1800. Rogers, therefore, or his assignee, was not entitled to a deed until the land was paid for. He did not enter, claiming the whole title. The contract itself admits the title to reside in Colden, and that it was to remain in him until Roger's part of the agreement was performed. Now, admitting the deed to the defendant, given in 1793, to be evidence of performance on his part, it is evidence of performance only at the time it was given, and not at any antecedent period. In 1792, therefore, when the deed to Mrs. Cooper was given, the defendant had not performed, and was not entitled to a conveyance. Such a possession has never been considered adverse. In *Jackson* v. *Bard*, (4 John. 230,) one Barton, in May, 1798, entered into articles of agreement with Dickenson and Harris, for the sale of certain premises. Soon after, one Smith purchased a portion of the premises from Dickenson by contract, and paid him $25, and entered into possession. On the 8th March, 1799, Barton gave a deed to Dickenson, and took back a mortgage. Barton foreclosed the mortgage, and the lessor of the plaintiff became the purchaser, and took a deed from Barton on the mortgage sale. The tenant in possession under Smith forbid the sale, and it was contended that the possession of Smith was adverse at the time of the giving of the mortgage, so as to render it void and prevent its operation. But the Court held it not to be adverse to Barton's title. They say Dickenson could not have set up against Barton an adverse holding; and Sm th who claimed under him, must be considered as standing in the same situation.

In *Jackson* v. *Camp*, (1 Cowen, 605,) th ‘ same principle is distinctly recognized. One Dyer made a contract for land with the agent of the proprietors ir 1792, and entered under it. In 1794 he received his deed. In 1796

he sold a part of it to the defendant. It appeared that he took possession under his contract, of land which the deed did not cover, and the defendant sought to retain it, on the ground of adverse possession. The possession taken under Dyer's contract, was held not to be adverse on several grounds. But, among others, the Court say, the agreement (made by Dyer with the agent) " did not put him in a situation to commence holding adversely, until he performed the condition. The land still belonged to the proprietor of the township. Whether he ever would perform, was contingent. He entered on the lot, it is true, but it was necessarily subject to the right of turning him off, if he neglected to make full payment. The possession, therefore, when taken, had not the characteristics to constitute it adverse. It was not hostile in its inception. On the non-performance, Dyer, would become liable to be turned out as a trespasser, and responsible in that character for the mesne profits." These observations are entirely applicable to this case, and are decisive of the question of adverse possession, at the time of the giving of the deed from Cadwallader Colden to Mrs. Cooper in 1792. That deed therefore was not void on the ground of champerty or maintenance.

A possession, in order to be adverse, must be accompanied with a claim of *the entire title*. If it appear that the title claimed is subservient to, and admits the existence of a higher title, the possession is not adverse to that title. (*Smith* v. *Burtis*, 9 John. 180.) Now, in this case, the agreement between Colden and Rogers, is an admission on the part of Rogers, that the legal title remained in Colden ; for it provided for the conveyance of that title to Rogers at a future period, upon certain contingencies. If Rogers had not performed the agreement, it would have afforded all the evidence of title, which would have been necessary to enable Colden to recover the possession from him, in an action of ejectment. Colden might perhaps be considered as the trustee of Rogers, holding the legal estate in trust for him, upon performance on his part ; and if Colden's estate in the land had been absolute and in his own right, and not in trust for the heirs of David Colden,

his grantee would probably have taken it subject to the trust for Rogers, and might perhaps have been compelled in Equity to convey. It may well be doubted whether, in a case like this, where the legal estate has been united to the older equitable interest, Chancery would interfere in favor of a younger Equity. But that inquiry is irrelevent here ; for in this action the legal title must prevail.

But if the defendant had not such an adverse possession on the 1st of November, 1792, as to render the conveyance to Mrs. Cooper of that date, void, it is contended that his possession, at all events, became adverse to the lessors of the plaintiff on the 13th of December, 1793, when he received his deed from Cadwallader Colden ; and that the claim of the lessors of the plaintiff is barred by the statute of limitations. It is answered that Mrs. Cooper was, at that time, both an infant and feme covert ; that her coverture continued until her death in 1797 ; that the descent to her children was suspended during the life of Thomas Cooper, her husband, who was tenant by the curtesy, and who survived until 1817. In reply, it is denied that Mrs. Cooper ever was so seised as to constitute her husband tenant by the curtesy. In order to create such a tenancy, it is said, that there must be a seisin *in fact*, either in the wife or the husband in her right. But admitting there was a sufficient seisin, then it is contended that in December, 1793, when the defendant's adverse possession commenced, Cooper was not tenant by the curtesy, as it is not shown that Colden Cooper, his son, was then born ; that his life estate did not *commence* until the death of his wife, in 1797 ; and that the statute having commenced running in 1793, could not be impeded by any subsequent disability.

It is well settled that cumulative disabilities are not allowed or protected by the statute ; that a party can only avail himself of the disabilities existing when the right of action first accrued. (*Demarest* v. *Wynkoop*, 3 John. Ch. Rep. 138, and the cases there cited and examined by Chancellor Kent, and *Jackson* v. *Wheat*, 18 John. 45, where the doctrine is fully recognized.)

It is also clear, both from the words and policy of the

statute, and the repeated expositions which have been given to it, that if twenty years have elapsed since the right of action accrued, and ten of those years have been free from disability, the right of entry is barred ; that is, the party is not entitled to twenty years after the disability ceases, to bring his action, but to ten years only, provided, at the expiration of those ten years, twenty years have elapsed since the right of entry or action accrued.

Thus, in this case, Mrs. Cooper, in 1793, when the defendant's adverse possession commenced, was an infant and feme covert. She was, at all events, entitled to twenty years to bring her action ; and if her coverture continued also for twenty years, she was entitled to ten years after it ceased. The statute would have protected her for thirty years. But if her infancy and coverture had ceased at any time within ten years after the defendant's entry, then she was barred at the expiration of twenty years ; because she had more than ten years free from disability. Her infancy, in fact, terminated in 1796, and her coverture in 1797, when she died. If her husband had not a life estate as tenant by the curtesy, so that her lands then descended to her heirs, their right of entry terminated in 1813, being twenty years from the commencement of the defendant's adverse possession, and more than ten years after the termination of the disabilities, and death of their ancestor. Kent, Ch. J. in *Smith* v. *Burtis*, (9 John. 181,) considers this the true exposition of the statute ; and although he says that the question did not necessarily arise in that case, and therefore he did not wish the opinion on that point, then expressed by him, to be considered definitive, subsequent reflection and examination confirmed him in that opinion; for he reiterates it in the case of *Demarest* v. *Wynkoop*, already referred to. (Vid. also 4 Taunt. 826. 6 East, 50. 4 Day, 298. 2 Conn. Rep. 27. 4 Mass. Rep 182. 4 T. R. 300. Plowd. 353.)

Unless, therefore, Thomas Cooper was tenant by the curtesy of his wife's lands, so as to suspend their descent to her heirs, the claim of the lessors of the plaintiff is barred by the statute of limitations.

It seems to be supposed by the counsel for the defendant, that unless the life estate of Cooper had vested, by the birth of a child, *previous to the commencement of the adverse possession in* 1793, although he might subsequently have become tenant by the curtesy, the heirs of Mrs. Cooper could not avail themselves of this new disability, to avoid the bar of the statute of limitations; that it would fall within the principle of cumulative or successive disabilities, which are not allowed by the policy of the act.

It is clear, that the birth of a child at any time during coverture, whether before or after the commencement of the defendant's possession, would constitute Cooper tenant by the curtesy of all the lands of his wife, of which, during coverture, she was so seised as to support such an estate. Lord Coke, (1 Inst. 30, *a.*) says, " four things belong to an estate of tenancy by the curtesy, viz. marriage, seisin of the wife, issue, and death of the wife. But it is not necessary that these should concur together all at one time; and therefore if a man taketh a woman, seised of lands in fee, *and is disseised, and then have issue*, and the wife die, he shall enter and hold by the curtesy. So if he hath issue which dieth before the descent." (Vid. also, 8 Rep. 36, *Paine's case,*(a) 13 Rep. 23, *Menvil's case.* 1 Cruise's Dig. tit. 5, *Curtesy*, ch. 1, s, 11, 25, p. 107, 112, 113.)

(a)    Cited
sometimes    S
Rep. 35, b. and
of some edi
tions, p. 67

Cooper then had a life estate in the premises in question, which was initiate, as it is expressed, (Coke Litt. 30, *a.*) upon the birth of a child in 1793; and became consummate upon the death of his wife in 1797, and continued until his death in 1817.

During the existence of this particular estate, the lands of Mrs. Cooper did not descend to her heirs, so as to give them a right of entry. The question then recurs, whether this particular estate which arose, or was created subsequent to the commencement of the adverse possession in 1793, was a cumulative disability, of which the lessors of the plaintiff cannot avail themselves under the statute, by way of excuse for not having brought their action within thirteen years after the death of their ancestor; the period

within which they must have brought it, if this estate by the curtesy had not existed.

The statute declares that no person shall make any entry into lands, but within twenty years next after his right or title descended or accrued; *provided*, that if any person, entitled to make such entry, be, at the time such right or title first descended or accrued, within the age of twenty-one years, feme covert, &c. such person and his heirs shall or may after the said twenty years be expired, make such entry, as he or they might have done before the expiration of the said twenty years, so as such person, within ten years after such disability removed, *or the heir or heirs of such person, within ten years after his death*, make such entry. Now it is most obvious, that the heirs here contemplated, are such heirs as have a right of entry. The object of the statute was to punish parties guilty of laches in the assertion of their rights, by a forfeiture of them. The *proviso* was intended to save those who, in judgment of law, had a reasonable excuse for their delay; and give to them and their heirs ten years, after the disability should be removed, to bring such action, or make such entry as they might have brought, or made within the twenty years. But the parties in reversion in this case could not have made entry, or brought any action to recover the possession during the twenty years. The statute would work great injustice, if it were held to affect the rights of reversioners or remainder men, during the continuance of the particular estate. Such was the view of the statute taken by this Court, in *Jackson* v. *Schoonmaker*, (4 John. 390,) and *Jackson* v. *Sellick*, (8 John. 262.) In the first case, it is said, that neither a descent cast, nor the statute of limitations, will affect a right, if a particular estate existed at the time of the disseisin, or when the adverse possession began; because a right of entry in the remainder man cannot exist during the existence of the particular estate. And the laches of a tenant for life will not affect the party entitled. The reason given shows that the circumstance, that the particular estate existed at the time of the disseisin, or when the adverse possession began, can vary the case. It applies with equal force to a case where it accrued subsequently.

In *Jackson* v. *Sellick,* the adverse possession commenced in 1772, when Vincent Matthews was tenant by the curtesy; the estate in reversion being in his daughter, then an infant. She married Beekman in 1783; and Matthews, the tenant by the curtesy, died in 1784. Beekman, the husband, died in 1807; and his widow, the daughter of Matthews, was the lessor of the plaintiff. When the adverse possession commenced, the only disability that existed, independent of the estate by the curtesy, was the infancy of the lessor. Her coverture did not commence until 1783; the particular estate having terminated in 1784. It was contened that the lessor being then of full age, and having a right of entry, was bound to exert it; and that she could not avail herself of her coverture; and it was urged that her coverture was a second or cumulative disability, which was never allowed. But the Court held, that during the particular estate, no right of entry had descended to the lessor; that the statute, therefore, did not begin to run until the death of the tenant by the curtesy; that coverture was the first disability; and they reiterate the language used by them in *Jackson* v. *Schoonmaker,* that the statute of limitations does not affect the right of a remainder man during the continuance of the particular estate. If the right of remainder men or reversioners are not affected by the statute, then, during the life of the tenant by the curtesy, it could not have run against the lessors; for they had no right of entry until his death. If Mrs. Cooper, then was so seised as to constitute her husband tenant by the curtesy, the right of the lessors are not barred by the statute of limitations, and they are entitled to recover.

It is said to be indispensable, that there should be an *actual seisin* of the land, either by the wife or by the husband in her right, in order to constitute him a tenant by the curtesy; that a seisin *in law* is not sufficient to support such an estate; it must be *in fact and in deed.*

This is undoubtedly the general language of the English authorities. (Coke's Litt. 39, *a.* Cruis. Dig. 108, tit. 5, ch. 1, s. 10.) But this rule, in its literal strictness, has not been adhered to, either in England or in this country.

In *De Grey* v. *Richardson*, (3 Atk. 469,) Lord Hardwicke ruled, that the husband was entitled to hold as tenant by the curtesy, an estate tail descended to his wife from her brother, which was leased for years; and on which leases there were large arrearages, but no rent paid during the life of the wife. So that the possession of a lessee for years, is so far the possession of the person entitled to the inheritance, even before the receipt of rent, as to entitle the husband to curtesy. And several other cases, in which the relaxation of the rule is exemplified, are collected in 1 Cruise's Dig. 110, 11, 12.

· In this Court, (*Jackson* v. *Sellick*, 8 John. 270,) it was held not to apply to wild and uncultivated lands; that in relation to them, actual occupation was not necessary to sustain an estate by the curtesy; that the possession follows the title so as to enable the owner to maintain trespass, and, with equal reason, to sustain an estate by the curtesy.

But it is suggested by the counsel for the plaintiff, and I think with great force, that the rule requiring an actual seisin, applies only to cases in which the title of the person claiming is not complete till entry. Thus, a person claiming by descent or devise, has only a seisin in law before entry; and if he die before entry, the inheritance will go, not to his heir, but the heir of the person last actually seised. Upon such a seisin of the wife, there could be no estate by the curtesy. Her issue would not be capable of inheriting from her; and the rule seems to be, that, to enable the husband to be tenant by the curtesy, the wife must have such seisin as will enable her issue to inherit from her. (Cruise's Dig. 112, s. 24.)

Now, in all the cases in which an actual seisin of the wife has been held necessary, it will be found that she claimed either as heir or devisee; and not by virtue of a deed or conveyance to which effect is given by the statute of uses. Where the statute executes the estate, as is said by Blackstone, (2 Com. 238,) the party intended to be benefited, is put at once into corporal possession of the land, without ever having seen it, by a kind of parliamentary magic. Here the wife did not claim as heir or devisee, but under a deed from

Cadwallader Colden; and I apprehend, with the counsel for the plaintiff, that no actual entry was necessary in order to enable her heirs to take, or her husband to be tenant by the curtesy.

I am accordingly of opinion that the plaintiff is entitled to recover in both causes.

SAVAGE, Ch. J.   I propose to consider the rights of the parties, at the several different stages of their title.

In 1787, the title to the premises in question, and other lands, is admitted to have been vested in the people of this state.   The act of that year, was a conditional grant of these lands to C. Colden in trust for the heirs of D. Colden.   The title, however, did not vest until the conditions were performed which was in February, 1790.   C. Colden was authorized to sell the lands to reimburse advances, which it was contemplated he would make, and in fact did make.   He took the legal estate, and the heirs, only an equitable one.   In May, 1790, he contracted to sell the premises in question to Rogers.   This contract he had a right to make, and was in fact the only person who could convey the title.   The defendant, Johnson, went into possession as assignee under the contract, and acquired an equitable interest in the land; but his possession was surely not adverse to the true title.   He was considered in law, a tenant at will to the owner of the estate, C. Colden.

Such was the relation of the parties, till the 5th of November, 1792, when C. Colden, who had, in 1790, been reimbursed his advances, put an end to his trust, by conveying the legal estate to the children of D. Colden.   Between the trustee and *cestuis que trust*, there was no difficulty.   Their title was the same.   Before the conveyance of 1792, they severally held different component parts, (if I may so express it,) of the same title.   The legal estate was in C. Colden, while the equitable estate rested in the heirs of D. Colden.   His (C. C.'s) acts were valid, and binding upon those heirs; and when he conveyed to them the legal estate, they took it, subject to such equitable interests as the defendant and others had acquired in the

lands, by virtue of the acts of the trustee. So far from an adverse possession, which would invalidate the conveyances from C. Colden to the heirs, there existed a tenancy. (4 John. 230.) That relation was transferred from the trustee to the heirs. They might have enforced the performance of the contract, and were bound on their part to give the title on the terms and conditions contained in it.

While such were the relations between these parties, the defendant, Johnson, on the 13th December, 1793, received a deed from Cooper as attorney for C. Colden. At this time, C. Colden had no interest in the lands; and as the defendants are presumed to have been conusant of the conveyance in 1792, receiving this deed was an act of disloyalty to the true landlords; and may, therefore, be considered with propriety, the commencement of a holding adverse to the title of the lessors.

It is contended, that the execution of the deed is evidence of the performance of the contract by the defendants; and so it would be undoubtedly, if it had been given by the owner of the title in pursuance of the contract. But under the circumstances of this case, the deed of C. Colden can have no more legal operation upon the title of the defendant, than if it had been executed by John Stiles. It evinces, however, an intention to hold under a title hostile to that of the lessors, and is therefore adverse. That a possession taken at first under the true title, may subsequently become adverse, seems to be conceded by several decisions of this Court. (1 Cowen, 610. 18 John. 448.) And this, I apprehend, is an exception to the rule as we find it laid down in *Brandt* v. *Ogden*, (1 John. 156,) that the possession must be adverse in its inception. After the 13th of December, 1793, the defendant claimed the entire title, exclusive of any right in another, and this claim was in hostility to the title of the lessors. Whether Mrs. Cooper had a right of action against the defendant on the execution of the deed to her, in 1792, would depend on the payment of the interest by the defendant. Supposing that to have been done, which we are warranted in assuming, as the case is silent on the point, it follows that Mrs. Cooper had no right of action against the

defendant, until December 13th, 1793, when he disclaimed her title by taking a deed from another, and as respects the rights of the parties, a stranger.

I assume then, what to me seems undeniable, that on the 13th of December, 1793, the defendant's possession became adverse, and that the statute of limitations would then have commenced running, but for the disabilities of Mrs. Cooper. At this time she was an infant and a féme covert ; and it is perfectly well settled, that if several disabilities exist, when the right of action accrues, the statute does not begin to run, till the party has survived them all. (3 John. Ch. Rep. 138. 1 Plowd. 375.) It is equally well settled, that cumulative disabilities cannot be allowed. Two disabilities were existing when the right of action accrued ; infancy and coverture : and the *proviso* in the statute gives ten years in which an action may be brought, after such disabilities removed. The last of these disabilities was removed by the death of Mrs. Cooper, in July, 1797. Her infancy had ceased in November, 1796.

According to the construction given to the statute, (3 John. Ch. Rep. 137,) the party has, in every event, twenty years to make his entry ; and if under disability when the right accrues, he has ten years, and no more, after the disability ceases. If twenty years were not to be allowed, and the heirs of Mrs. Cooper were confined to ten years after the death of their mother, their right would have been barred in 1813, though the twenty years would not expire till 1817. But as the statute did not intend to place those persons named in the *proviso* in a worse condition than those who were under no disability whatever, it is a reasonable construction of the statute, that twenty years shall be allowed them at all events. It may happen that this *proviso* will give to some thirty years, while others, under similar disabilities, may have but the twenty years. Such would be the situation of the lessors of the plaintiff, were there no intervening life estate, to suspend further the operation of the statute.

It becomes important, then, to inquire whether Thomas Cooper was tenant by the curtesy ; and if so, what effect

the existence of his life estate has upon the rights of the parties.

To constitute this estate, four things are necessary: marriage, seisin, issue born alive, and the death of the wife. The marriage in this case took place on the 7th of April, 1792. According to the view which I have taken, the wife became seised of the legal estate, on the 5th of November, 1792. She had one child in 1793, and another in 1795; and died in 1797, when the husband's estate became perfect.

It is objected, however, that the wife could not have that seisin in fact which is necessary to make the husband tenant by the curtesy. It has been settled by this Court in the case of *Jackson* v. *Sellick*, (8 John. 269,) that a wife who had the legal title to wild and uncultivated lands, had such a seisin as was sufficient to constitute her husband tenant by the curtesy. Here, however, there was an actual entry by the tenant of the wife; for it has also been adjudged by this Court, that a purchaser by contract holds as tenant at will. It is immaterial at what period, during coverture, the wife becomes seised; whether before issue or after. Nor is it material, whether the issue be living at the time of the seisin. So, if the wife be seised, and disseised before issue, yet if she have issue after the disseisin, the husband shall hold as tenant by the curtesy. (Co. Litt. 29, 30.) The husband's title does not become perfect till the death of the wife, though, for some purposes, it is supposed to commence at the birth of a child. He is then called tenant by the curtesy *initiate ;* but not *consummate,* till the death of the wife.

Assuming, then, that there was such seisin in Mrs. Cooper as entitled her husband to hold as tenant by the curtesy, it becomes necessary to inquire, whether the existence of that estate prevents the operation of the statute of limitations. In *Jackson* v. *Schoonmaker*, (4 John. 402,) it was decided that "neither a descent cast, nor the statute of limitations will affect a right, if a particular estate existed, at the time of the disseisin, or when the adverse possession began; because a right of entry in the remainder man can-

not exist during the existence of the particular estate; and the laches of a tenant for life will not affect the party entitled. An entry, to avoid the statute, must be an entry for the purpose of taking possession; and such an entry cannot be made during the existence of the life estate." In that case, the disseisin happened after the tenancy by the curtesy was consummate; and hence, possibly, the peculiar phraseology of the Court, when they say, "if a particular estate existed at the time of the disseisin, or when the adverse possession began." I apprehend the doctrine is equally true, that the right of a reversioner or remainder man is not affected by the statute, if the particular estate existed when the right accrued. And the same reason may be given for the one as the other; because the right of entry never existed in him, in reversion or remainder, during the continuance of the particular estate. When did the statute become operative? Not till the death of Mrs. Cooper, as that event terminated the coverture. But the same event which subjected her heirs to the operation of the statute, consummated the particular estate which precluded them from any right of entry; *et impotentia excusat legem.*

Before the statute can, by any reasonable construction, be made to operate, there must be some laches on the part of those asserting a right of entry; and the policy of the statute gives to every claimant at least ten years, within which laches shall not be imputed.

At what period of time, I would ask, was it in the power of the heirs of Mrs. Cooper to have asserted their rights, before 1817, when Thomas Cooper died? Their infancy, I admit, is no excuse for them, as successive disabilities are not allowed. The statute was not operative till the death of Mrs. Cooper. It is true, indeed, that more than twenty years have elapsed since the adverse possession commenced; and more than ten years since the last disability was removed, which existed when the disseisin took place; but I would ask, when were the claimants guilty of laches? They were not bound to make an entry, or claim, till the death of Mrs. Cooper. And from that period, till the death of the tenant for life, the law would not permit them to en-

ter. Shall laches, then, be imputed to them? Certainly not. Whether Colden Cooper was born before or after the disseisin, seems to me not to change the rights of the parties. The lessors of the plaintiff have brought their action within ten years after the operation of the statute upon their claim; and are not barred by it. Having, in my opinion, shown a right to one-fourth of the premises, they are entitled to judgment for so much.

WOODWORTH, J. (dissenting in the first cause.) I am of opinion that a legal title, to one undivided fourth part of the premises in question, was conveyed to Catharine Cooper, by the deed from Cadwallader Colden, of the 5th of November, 1792. At this time, the possession held under a contract to sell, given by William Cooper, as attorney for Cadwallader Colden, was not adverse; because the purchase rested in contract, and the conditions were not yet performed. An adverse possession cannot commence under a contract to purchase, as has been frequently decided upon reasons fully assigned. The adverse possession of Johnson commenced December 13th, 1793, when Cooper conveyed to him. At that time Catharine Cooper was an infant and feme covert. She died in July, 1797, leaving a son born in 1793, since dead without issue; and Alice, one of the lessors of the plaintiff, born September 30th, 1795.

The question is, whether the plaintiff is bound by the statute of limitations. It is contended that Mrs. Swartwout had but ten years from the death of her mother to bring a suit; because Thomas Cooper was never tenant by the curtesy; and consequently there was no suspension of the statute. The argument is founded on this, that it does not appear that Colden Cooper was born before the deed executed to the defendants; and if he was not, it is contended that there was not such a seisin in the wife as would make the husband tenant by the curtesy; or, in other words, that it must be an actual seisin, after the birth of issue; and that a previous seisin, during the coverture and before issue, is insufficient. The law on this subject is otherwise. According to Lord Coke, if a man takes a woman seised of lands, and is disseised, and

then has issue, and the wife dies, he shall enter and hold by the curtesy. (1 Cruise's Dig. 107, ch. 1, s. 11. Id. 112, s. 25.) So that whether the birth of Colden Cooper was before the deed of 1793, or not, is immaterial as to the question whether Thomas Cooper was not tenant by the curtesy, at some period during the coverture. Mrs. Cooper did not take as heir or devisee, in which cases it might be necessary for her to make an actual entry, in order to enable her heir to take by descent, or her husband to be tenant by the curtesy. The title was not cast on her by act of law ; but she took under a deed, to which effect is given by the statute of uses ; by which she was put in corporal possession, there being no adverse holding at the time. (2 Bl. Com. 312, 338. 1 Inst. 29.)

But admitting this proposition to be correct, the material point is this : when did the right of entry first accrue ; and what were the existing disabilities at that time ? The answer is, the adverse possession commenced December 13th, 1798. The only disabilities then existing, were infancy and coverture. No tenancy by the curtesy existed at that period ; for it is not shown that Colden Cooper was then born. The birth of a child is necessary to constitute this estate. The husband at that moment had no estate that could be continued beyond the coverture ; for, on the death of his wife without issue, the estate would have immediately descended to her heirs. Whether he would ever have a greater *right*, was altogether contingent and uncertain. He had not even an inchoate right as a tenant by the curtesy ; consequently, the *proviso* in the statute applied to coverture and infancy only ; and gave ten years after those disabilities were removed. But the party has, in any event, 20 years to make his entry ; and as Mrs. Cooper died in 1797, four years after her disseisin, the effect of the *proviso* would be to give her heirs sixteen years after her death. The sixteen years ended in 1813. The law is well settled, that the right of entry is not barred until all the disabilities, existing when the right of action accrued, are removed ; that there cannot be cumulative disabilities ; for when the statute first begins to run, all subsequent disabilities are disregarded. It is then evident, that although Thomas Cooper afterwards became a tenant by the curtesy, it does not interpose any additional

barrier to prevent operation of the statute. The following authorities establish the doctrine laid down: 3 John. Ch. Rep. 129; 18 John. Rep. 44; 8 id. 262; 2 Conn. Rep. 27; 6 East, 80; 4 Mass. Rep. 182; Plowd. 353. As the deed to the defendant, Johnson, bears date December 13th, 1793, and by the testimony of Cadwallader D. Colden, it appears that Colden Cooper was born in 1793, it is highly probable that his birth was previous to the disseisin. Had this been shown, then Thomas Cooper would have had a contingent estate as tenant by the curtesy; and in the event of his surviving his wife, it would have become absolute. But on the facts before us, I am of opinion that the defendant, Johnson, is entitled to judgment.

Judgment for the plaintiff in both causes.