JACKSON, *ex dem.* BEEKMAN, *against* SELLICK.

Where a *feme covert* is the owner of wild and uncultivated land, she is considered in law, as in fact, possessed, so as to enable her husband to become a *tenant by the curtesy.*

An actual entry or *pedis possessio* by the wife or husband, during the coverture, is not requisite to the completion of a tenancy by the curtesy.

Lands descended to A. a *feme covert,* who had a daughter C. born in 1756. A. died in 1764, and B. her husband died in 1784. C. the daughter, married D. in 1783. An adverse possession was taken of the land in 1772, it being then vacant and uncultivated;

THIS was an action of ejectment, for land in the *Minisink Angle,* in *Orange* county. The cause was tried at the *Orange* circuit, in *September,* 1810, before Mr. Justice *Van Ness.* A verdict was taken, by consent, for the plaintiff, with liberty to the defendant to move to set it aside, on a case containing the following facts :

A large tract of land, including the premises in question, was granted by letters patent, dated the 28th *August,* 1704, to *Matthew Ling,* and twenty-two others, among whom was *John Parson,* to be held, one twenty-third part thereof, to each of the patentees, in fee-simple. *Parson,* by deed, dated 26th *November,* 1706, reciting the patent, conveyed his twenty-third part to *Henry Van Ball,* with covenant of warranty. A partition was made by commissioners, under the colony act of the 7th *Anne,* on or about the 31st *March,* 1715, of that part of the tract called the *Angle,* of which the premises in question are part, and by which the premises in question were allotted to *Henry Van Ball,* for his share thereof, in severalty. *Van Ball,* being owner of the premises, and other

and C. after the death of her husband, in 1807, brought an action of ejectment; it was held that B. being a tenant by the curtesy, no right of entry accrued to C. until after the death of B. in 1784, and that C. being then a *feme covert* was not bound to bring her action in 20 years thereafter, but was protected by the statute during her covertnre.

ALBANY,
August, 1811.

JACKSON
v.
SELLICK.

lands, made his will, the 17th *April*, 1711, and authori-
zed his executors to sell his real estate, and distribute
the proceeds among the children of his four sisters, *Ma-
ria*, the wife of *Isaac Depeyster*, *Margaret*, the wife of
*Nicholas Evertson*, *Helena*, the wife of *Gualterius Dubois*,
*Rachel Bayard*, the widow of *Petrus Bayard*, and to
place the share of *Hannah*, his remaining sister, at inte-
rest during her life, for her use, and after her death, to
divide it among the other heirs.   The testator died with-
out issue.   *Rachel Bayard*, one of his sisters, married
*Henry Willman*, whom she survived; and she, *Rachel
Willman*, after the death of her husband, about the 14th
*June*, 1746, by her last will, devised the half of all her
real estate to her son, and the other half to her daughter,
*Elizabeth Willman*, who married *Vincent Matthews*, by
whom she had one child, a daughter, born in 1756, who
married *Theophilus Beekman*, in *January*, 1783.   *Han-
nah Van Ball*, the unmarried sister of *Henry Van Ball*,
died intestate, and without issue, in the life-time of her
sister *Rachel*.   *Elizabeth*, the wife of *Vincent Matthews*,
died the 18th *August*, 1764, and *Vincent Matthews* died
the 24th *May*, 1784.   *Theophilus Beekman* died about
the 1st *January*, 1807, and his widow, *Elizabeth Beek-
man*, is the lessor of the plaintiff.

No evidence was offered that *Rachel*, the sister of
*Henry Van Ball*, or her daughter *Elizabeth*, the wife of
*Matthews*, or *Theophilus Beekman* and *Elizabeth* his wife,
or either of them, ever entered into the premises in ques-
tion, or had the actual possession thereof; but the same
continued *vacant*, from the time of issuing the patent,
until in the year 1772, when those under whom the de-
fendant holds, went into possession, under conveyances,
which they considered valid, and which were adverse to
the title of the lessor, above stated; and the premises
have been held by the defendant, and those under whom
he claims, ever since 1772, adversely to all others.

*S. Jones*, jun. for the defendant. 1. The adverse possession of the defendant was a complete defence. From 1772 there was an adverse possession for more than 25 years, exclusive of the period of the war. This adverse possession, thus clearly proved, is *prima facie* evidence of title. It was shown also, that this possession was taken and held under colour of title. The defendant, therefore, will not be lightly disturbed. The lessor must not only make out a clear and perfect title, but must show a legitimate and satisfactory excuse for sleeping on her rights.

2. Then has the lessor shown any legal disability which can save her right of entry, and protect her from the operation of the statute of limitations? We contend that no such disability has been proved. If the lessor was of full age when her right of entry accrued, she was bound to exert it, and cannot avail herself of *coverture*, or any other disability.* If she marries a husband who is regardless of her rights, it is her misfortune; but the coverture is no excuse for not entering, as soon as she arrived at age.

* *Co. Litt.* 246.
a. b.  *Litt.* s.
403.

The statute† declares, "that all writs of *scire facias*, &c. shall be sued and taken within 20 years next after the title or cause of action first descended, and not after; and no person shall, at any time hereafter, make any entry into any manors, lands, &c. but within 20 years next after his right or title descended or accrued to the same," &c. " provided, &c. if such person be within the age of 21 years, *feme covert*, insane, or imprisoned, such person and his heirs, shall or may, after the said 20 years have expired, bring such action, and make such entry, as they might have done before the expiration of the 20 years, so as such person, within 10 years after his death, sue forth such writ, or make such entry, and no time after 10 years as aforesaid." The statute does not provide for a second disability, nor can we find a case where a second disability has been allowed. The action must be brought, or

† Sess. 24. c.183.
s. 3.

the entry be made, within 20 years after the right accrues, except in the case of infants, &c. If the right has accrued, and the person is of age, it must be exerted within 20 years. In *Doe* v. *Jesson*,* where an ancestor died seised, leaving a son and a daughter, infants, and a stranger entered, and the son died abroad, within age, it was held that the daughter was not entitled to 20 years after the death of her brother, to make her entry, but only to 10 years; more than 20 years in the whole having elapsed since the death of the person last seised. Courts lean against the allowance of successive disabilities; as the time for making an entry might be extended indefinitely, by allowing a second, third, and other disabilities. The effect of the exception in the statute, as to the period of the war, is only to extend the term of limitation to 27 years and 5 months.

But it may be said, that *Vincent Matthews* was a *tenant by the curtesy*, and not dying until 1784, when the lessor was a *feme covert*, she is protected by the proviso in the statute.

The estate of a *tenant by the curtesy* is *sui generis*, and being in exclusion of the heir, it ought to be taken strictly. It seems to have originated from the feudal notion that there must be a tenant in possession of the land, capable of performing the feudal services; and to compensate the husband for the performance of those services, the law gave him the rents and profits during his life. It is applicable only to lands in full occupation and use, and which yield an annual profit. Such an estate cannot properly exist in wild lands, entirely waste and uncultivated. It is essential to an estate *by the curtesy*, that there should be an *actual seisin* of the land by the wife, or by the husband in right of the wife. A *seisin in law* is not sufficient to entitle the husband to *the curtesy*.†

There had never been any entry or possession, nor

*ALBANY,*
*August, 1811.*

JACKSON
v.
SELLICK.

* 6 *East*, 80.

† 2 *Bl. Comm.*
127, 128. *Co.
Litt.* 29, 30 a.
*Perk.* s. 457---
5 · c 1. s. 10, 11,
458. &c. 8 *Co.* 34. a. 1 *Ves.* 307. *Watk. on Desc.* 32. 1 *Cru. Dig.* tit.
12, 13, 14. *Doct. & Stud.* b. 2. c. 15. *Keilway,* 2.

even an attempt to enter on the premises, so that *Vincent Matthews* could not be a *tenant by the curtesy*.

3. Again, the lessor has shown no title. By the will of *Henry Van Ball*, the executors were directed to sell the lands and distribute the proceeds. It does not appear from the case, that any sale was ever made. If not, the lands descended to the heirs at law ; and it does not distinctly appear who were the heirs at law. If the lessor was one of the heirs, she can be entitled only to an eighth of the premises.

*P. W. Radcliff* and *D. B. Ogden*, contra. 1. The lessor has shown a clear and undoubted title, deduced from government, so as to exclude all question as to any other person. The defendant, then, not the lessor, ought to be held to the greatest strictness.

No doubt the statute is a complete bar, unless we can show that the lessor comes within some of the provisoes or exceptions. The right of entry, we contend, did not accrue until after the death of *Vincent Matthews*, in *May*, 1804, and the lessor, being then a *feme covert*, she had ten years after the death of her husband, in 1807, to bring her action. It is not denied, that if there was a *tenant by the curtesy*, that the statute would not run until after the death of the tenant. Then was *Vincent Matthews* a tenant *by the curtesy ?* All the cases cited from the *English* books are applicable only to lands actually tenanted and cultivated. The title of the lessor is deduced from the government, and the land remained entirely vacant until 1772. Why is an actual entry or seisin required by the *English* law ? It is to give notoriety to the possession, or notice to the vicinage. But for what purpose should the owner go into the wilderness, fifty or a hundred miles remote from any human habitation, and declare his intent ? The law can never require so idle and useless a ceremony.

In *England*, an action of *trespass* will not lie on a seisin

in law before entry.* But this court has held, that trespass will lie against an intruder on wild land, without an actual entry by the owner. This must be on the principle, that in regard to wild lands, the possession is held to be in the person having the right. When the law presumes the possession, it is considered as an *actual possession*, so as to transmit the inheritance.

Where, on the death of *S.* an estate-tail descended to his sister *A.* who was married and had issue, it was held that the husband of *A.* was entitled to be a tenant by the curtesy.† Where lands are held under a lease, the heir is considered as having a seisin in deed, before entry or receipt of rent ; because the possession of the lessee is his possession. An entry by the husband is not necessary to entitle him to the tenancy by curtesy.‡ The wife being in possession, the law adjudges the seisin to be in the husband, immediately on her death. By the birth of a daughter (the lessor) in 1756, *Vincent Matthews* became a *tenant by the curtesy* initiate ; and his estate was complete on the death of Mrs. *Matthews* in 1764, and there could be no right of entry, until after his death in 1784.

The statute of limitations being in restraint of a prior right, the restraining part ought to be construed strictly, and the exceptions liberally expounded. On the construction contended for by the defendant, a *feme covert* dying within one year after the commencement of the disability, leaving an infant, such infant, though under age, would be bound to assert its right in 10 years after the death of the mother, or the removal of the disability. There must, then, be a second disability allowed, otherwise the obvious intent of the statute, which was to give the infant 10 years, after arriving at full age, would be defeated.

The statute proceeds on the ground of *laches* in the person having the right of entry. Now, this *laches* can never be imputed to an *infant* or *feme covert.*

ALBANY,
August, 1811.

JACKSON
v.
SELLICK.

* *Gilb. on Ten.* 45. (4th edit.) and note 30. 3 *Bl. Comm.* 210.

† 3 *Atk.* 469. *Cruise,* tit. 5. c. 1. s. 13, 14. *Co. Litt.* 15. a. 3 *Wils. Rep.* 521. 7 *Term Rep.* 390. 5 *Term Rep.* 213. *Watk. Law of Desc.* 27, 28. 32, 83.

‡ *Cruise,* tit. 5. c. 2. s. 30. *Watk. on Desc.* 82.

Until 1772, the land was vacant, and the lessor an infant. The provision of the statute does not apply to an adverse possession taken against an infant, or person under a legal disability.

*Jones*, in reply, said, he admitted that possession follows the right, where there is no adverse possession ; that is, the legal seisin or possession, which has the beneficial consequences stated, as to transmitting the inheritance, or in regard to leases and conveyances by bargain and sale. But the case of a tenancy by the curtesy, is an exception to the general rule, and requires an *actual*, as distinguished from a *legal* seisin. *Watkins*, in his *Treatise on the Law of Descents*,[*] lays it down, that "if hereditaments descend to a daughter, and such heiress *has* a seisin in law, unrebutted by another seisin, yet such seisin in law will *not* entitle the husband to the curtesy." But a widow may claim her dower, where her husband has only a *seisin* in law, and he dies before entry.[†]

[*] *Wat. on Desc.* 38.

[†] *Watk. on Desc.* 32.

Possession follows the right in regard to wild lands, for every purpose except that of a tenancy by the curtesy ; but it is this peculiar estate, which is not to be favoured, in which the law requires an *actual seisin*.

The land is situated near *Goshen*, an old settled town ; *Vincent Matthews* might have entered and improved in 1764. There was an entry and partition made in 1715. It was, in fact, settled and improved by the defendant and others, in 1772.

The statute says, no entry shall be made, &c. until 20 years after the right or title descended or accrued. Now the *right accrues* whenever a person becomes possessed of a right of entry. Mrs. *Matthews* had a seisin in law, until 1772, when she was devested of that seisin, and driven to her right of entry.

KENT, Ch. J. delivered the opinion of the court. The defence, in this cause, turns wholly upon the question, whether the right of recovery is not barred by the statute of limitations.

The lessor of the plaintiff was an infant when the adverse possession began, in the year 1772. But admitting that the father, *Vincent Matthews*, was tenant by the curtesy, there was then a particular estate for life in the premises existing, and no right of entry had descended, or could vest in her, during the continuance of that estate. It was declared, in *Jackson* v. *Schoonmaker*, (4 *Johns. Rep.* 390.) to be the law, that the statute of limitations did not affect the right of a remainder-man during the continuance of a particular estate; nor would the acts or *laches* of the tenant of the particular estate, affect the party entitled in remainder. The right of entry of the lessor did not accrue, and could not exist during the estate by the curtesy. That estate ceased by the death of *Matthews*, in 1784, and had she been under no disability, she would then have been bound to have brought the suit within 20 years thereafter, but she was at that time a *feme covert*, and protected from the statute of limitations, by the proviso in favour of the disability of coverture. (*Laws*, vol. 1. 563.) This is not a case of cumulative or successive disabilities, and we, at present, have no concern with any question to which they might give rise. The coverture was the *first* and only disability existing, when her right of entry accrued, and that is expressly saved by the statute.

There is no bar to the plaintiff's right of recovery, under the statute of limitations, provided her father was a tenant by the curtesy, and this is the next and only real point in the case.

There was no *pedis possessio*, or possession in fact, of the premises, in the popular sense of the words, by either *Matthews* or his wife, during the coverture; for the lands continued vacant, or remained as new lands, wild and

uncultivated, from the date of the patent in 1704, to the time of the commencement of the adverse possession in 1772. The title under the patent to an undivided eighth part of the premises, clearly existed in *Matthews's* wife. She derived it by will from her mother, who was one of the four coheirs of *Henry Van Ball.* The question is, was she not to be considered as seised in fact of these premises, so as to enable her husband to become a tenant by the curtesy? To deny this, would be extinguishing the title of tenant by the curtesy, to all wild and uncultivated land. It has long been a settled point, that the owner of such lands is to be deemed in possession, so as to maintain trespass. The possession of such property follows the title, and so continues, until an adverse possession is clearly made out. This is the uniform doctrine of this court; and there is no reason why the same rule should not apply when the title by curtesy is in question. To require the actual occupation of such lands, during the coverture, would be an unreasonable, if not an impracticable requisition. The general language of the *English* cases is, that there must have been actual entry, but the rule had reference to enclosed or cultivated lands. We must take the rule with such a construction as the peculiar state of new lands in this country requires; and this may be done without any departure from the spirit and substance of the *English* law. Some of the old books would not allow the curtesy, without actual entry upon the lands, even though it appeared to have been impossible for the husband, with the utmost diligence, to have made the entry during the coverture. (*Perkins*, 470. *Doct. & Stud. Dial.* 2. c. 15.) But Lord *Coke* talks more reasonably. He says, that if a man seised of an advowson, or rent in fee, has issue a daughter, who is married and has issue, and he then dies seised, and the wife, before the rent became due, or the church became void, dies, she had but a seisin in

law, and yet her husband shall be a tenant by the cur-
tesy, because he could by no industry attain to any other
seisin. *Et impotentia excusat legem.* (*Co. Litt.* 29. a.)
The letter of the rule was very much relaxed by Lord
*Hardwicke.* In *De Grey* v. *Richardson,* (3 *Atk.* 469.)
he allowed the curtesy in lands on which, when they de-
scended to the wife, there were leases for years exist-
ing, and a rent incurred which remained due during
three months of the coverture, and into which lands she
made no entry, nor received any payment during her
life. He professed to decide the case, as a question of
law, and said that this was such a possession in the wife
as made the husband tenant by the curtesy. In another
case before Lord *Hardwicke,* of *Sterling* v. *Penlington,*
(*7 Viner,* 149. pl. 11.) he allowed this title, when the
wife had been, in fact, denied possession during the co-
verture, by a tenant in common, who supposed, through
mistake, that the wife's right, as heir, had not then ac-
crued.

These cases are as strong as the present, and prove
that actual entry, or *pedis possessio,* is not absolutely re-
quisite, and that if the party is constructively seised in
fact, it will be sufficient.

The court are accordingly of opinion, that the plain-
tiff is entitled to recover one undivided eighth part of the
premises.

Judgment for the plaintiff.