Reese, J.
delivered the opinion of the court.
Between the years of 1787 and 1793 inclusive, the Stale of North Carolina granted to George Gillespie the elder, four several tracts of land, adjoining each other, and calling to he on McCartney’s creek or McCartney’s branch, two containing one hundred acres each, and two containing fifty acres each. On the 14th December, 1793, George Gillespie made and pub *268 lished his last will and testament, and therein, among other bequests and devises, devised as follows: “I give and bequeath to my well beloved daughter, Jane Gillespie, her heirs and assigns forever, the tract of land I bought of James and Charles McCartney, lying in Greene county.” Some time after the death of George Gillespie the elder, his daughter Jane, the devisee, intermarried with one William King, and the defendants in error are their children.
In the year 1803, William King, without his wife in any manner joining therein, conveyed to Mahalon Hayworth, the land comprised in the four grants made to George Gillespie above described, and also the land comprised in a one hundred acre grant to one Ford, adjoining to and in some degree interfering with the Gillespie grants. LIn 1804, Mahalon Hayworth conveyed the land described in three of the Gillespie grants and in the Ford grant to John Copeland; and in 1809, one David Copeland conveyed the same to the plaintiff in error; and in the same year, one Samuel McNair conveyed to the plaintiff in error, a tract of land estimated to contain sixty acres, which the deed recited had been bought by him of Mahalon Hayworth. The plaintiff in error had been in possession of the land covered by his deed since the date thereof. Jane King, the mother of the defendants in error, died in January 1828, and William King, her husband and their father, died in October 1835.
The defendants in error commenced this their action of ejectment on the 4th February, 1837, in which they contend for the land comprised in the deed from William King to Hayworth; and in the circuit court, by the verdict of a jury, they recovered the same; but before the motion for a new trial, which had been entered in the cause, was disposed of, they released all title and claim to so much of the Ford grant as did not interfere with the Gillespie grants. A new trial was refused, and this appeal in the nature of a writ of error thereon prosecuted. The material points here discussed were all made in the circuit court, and arc comprised in the well considered and very distinct charge of the circuit judge to the jury. We deem it proper to quote hero the whole of it from the record. “If there was any part of the Ford grant not covered by the grants to George Gil *269 lespie, and which Gillespie did not purchase from the Mc-Cartneys, or for which he had no title at the time of executing the will, for such part the plaintiffs were not entitled to have a recovery, as the testator could not devise lands to which he had no title. It is further insisted by the defendant’s counsel that a portion oí'the land in some of the tracts is not identified with sufficient certainty to enable the plaintiffs to recover. On this point the court instructed the jury, that the identity of the land sued for, must be established with reasonable certainty: absolute certainty is not required; and if from the whole of the evidence the jury believe that any of the tracts are not sufficiently identified, or that the proof is so vague and indefinite that they cannot determine where the land lies, for such tract they must return a verdict for the defendant.
For the defendant it is also contended that nothing passed under the devise in the will of George Gillespie but the land mentioned in the grant No. 1260, for 100 acres, and that no pa-rol evidence can be introduced to explain the intention of the testator.
The court charged the jury on this point; that the land purchased by George Gillespie from the two McCartneys passed to the devisee, Jane Gillespie, under the will of her father, and that parol evidence was admissible to show what land the testator actually purchased from James and Charles McCartney, and also to show how many tracts or parcels it was composed of, and that its identity might be shown, although there were no particular metes and bounds designated at the time of the original purchase.
Another proposition insisted upon by the defendant’s coun-selis,that if the proof shows that Jane Gillespie, or King, as her husband, never had actual possession of more than the tract No. 1260, that with respect to the other three tracts Wm. King never was tenant by the curtesy, and so his wife’s heirs were not barred from suing on the death of Mrs. King; and that possession of one tract is not the possession of another adjoining tract owned by the same person. In relation to which the court charged the jury, that if the wife was seized in law, that is, had a legal title to lands, although there might be no seisin in deed, *270 yet the husband would be tenant by the curtesy of such lands as the wife had a legal title to, although they might be waste and uncultivated, and never in the actual possession of either the wife or husband; and as to the facts of this case, whether there was an actual possession of one or all of these tracts, the jury were the judges.
Again: it is further insisted by the defendant’s counsel, that as the plaintiffs did not institute their suit within seven years after the death of Mrs. King, their mother, they were barred by the statute of limitations of 1819. To this proposition the court responded, in substance, that this question has been determined adversely to the proposition of the counsel for the defendant in another branch of this same case, and as this court understands the decision, as the wife had no right to sue during cover-ture, and if there were issue born by the marriage, the husband became tenant by the curtesy, and the heirs of the wife had no right to enter, and consequently could not sue until after the death of the husband, Mr. King, and, therefore, the statute of limitations did not commence running until after his death, and if the suit was brought within three years from that time the plaintiffs are not barred.
The counsel for the defendant further insisted, that in civil causes the jury were the judges of the law and the facts, and that they were at liberty to disregard the opinion of the supreme court or the laws given them in charge by the court, and determine it for themselves; although they would in general pay respect to the opinion of the court as to the law, yet they might determine the law for themselves in disregarding the opinion of the court. To which proposition the court charged in substance, that in civil causes the jury were not the judges of the law, that it was the duty of the court to expound and explain the law, and the province of the jury was to determine the facts. The proposition contended for would be of dangerous tendency, and in the judgment of the court, not permitted by the laws of this State.
It is further insisted by the counsel for the defendant, that you are authorized to presume, a deed of conveyance either from George Gillespie or Jane King and her husband, or an elder *271 and better grant from the State, from the adverse possession of twenty years or more. On this point the court instructed the jury as follows: It is as a general proposition true, that when a person has been in the undisturbed possession of land for twenty years or more, claiming it adversely, that from such long-continued possession upon principles of public policy, and for the security and peace of society, juries are authorized to presume either a deed dr grant; yet this general principle has its exceptions and limitations, and as I understand the opinion of our supreme court from the record before me, this case is one of them. The reason of the law is probably this, that as the legal existence of the wife is merged in that of the husband during the coverture, the laches or neglect of the husband shall not operate to the prejudice of the wife.
It is further insisted by the counsel for the defendant, that if William King was tenant by the curtesy of all the land sold, as he had only a life estate, and made an absolute deed with general warranty, that was a forfeiture of his life estate, and so, on the death of Mrs. King, descended to her heirs, and there was no impediment to sue in the way; and if within seven years thereafter,' while there was an adverse possession, they did not sue, they are barred by the statute of limitations.
■ On this point the court charged the jury, that the deed of W. King, although purporting to convey an estate in fee only, operated as a conveyance of his interest in the land. That the old law of forfeiture, as it once existed in England, is not in force in this State, where the conveyance is by bargain and sale, which is not attended with many of the consequences that belonged to the ancient mode of conveyance by feoffment and livery of seisin. After the marriage the husband was entitled to the rents and profits of the wife’s land, and if there is issue born, he is tenant by the curtesy for life, consequently the wife’s heirs cannot sue until the determination of the life estate.
It is further insisted, that if the proof shows that the plaintiffs have land by descent from Wm. King of greater value than the land in dispute, that then and in that case the plaintiffs are barred by the warranty of Wm. King, their ancestor, or they are estopped by his deed. On this point the court charged the jury, *272 that the plaintiffs are not estopped by the warranty of their ancestor, Wm. King; that the ancient law of warranty and estoppel is not in force in this country, the remedy being by an action of covenant on the warranty. But even if the law were to be considered as in force in order to make it available in this case for the defendant, he must show a privity in estate with the warrantor, and if there is not such privity, then the doctrine of estoppel would not apply.
It is further argued by the counsel for the defendant, that if the deed of bargain and sale conveyed no right or interest but what the person had who makes the deed, what then passed by King’s deed and how could the heirs of Mrs. King be prevented from suing? The court charged the jury, that although the deed was absolute, it only conveyed King’s interest, yet if there was issue by the marriage, Wm. King became tenant by the curtesy upon the death of his wife; and if he had alone executed a deed of conveyance during the coverture, her heirs could not sue until after the death of the husband and the determination of the life estate, his deed operating and being valid to that extent, and if the wife’s heirs sued within the time prescribed, after the husband’s death, they are not barred.
We are of opinion that in this entire charge there is no error:
1st. As to the devise; the words “the tract of 1 and bought” of “Charles and Jas. McCartney, lying in Greene county” are terms of description which naturally and necessarily refer themselves to extensive facts and circumstances for ascertainment. - The term “bought” is not technical and does not require, particularly as used in that early day, in order to satisfy its meaning, that a deed or writing should be produced or should ever have existed.
If the McCartneys lived upon the creek of that name and there had an improvement and the testator proposing to procure grants from the State of North Carolina for himself of the land occupied by them, purchased their pre-emptions and improvements, and subsequently, for the purpose of distinguishing it from his other lands called it the “McCartney tract,” or the tract he bought from the McCartneys, these facts and circumstances may be proved to explain and give effect to the de *273 vise. It has been often done in analogous cases, and the fact that the muniments of his title consisted of four distinct and adjoining'grants would not prevent the whole of them from being properly described and included by the word “tract” or McJ Cartney tract, if such were the meaning and purpose of the testator.
2d. It is insisted that there is not with us any such estate as tenancy by the curtesy, the same being founded on feudal principles many of which have been abrogated or become obsolete as inapplicable to our condition and constitution, and that this too ought to be so regarded; but if such an estate exists here, yet the husband and wife had actual possession and cultivation and therefore seisin in fact of one only of these four tracts, and that the'husband’s curtesy would not attach to or arise upon a seisin in deed or in law. As to the first question, the existence here of this estate of curtesy, we suppose nd serious doubt can be entertained by any one. The revolutionary statute of North Carolina adopts all such portions of the common law as had theretofore been in force and use in the Province. This portion had before that time been and subsequently continued in force and use in that State, and has been adopted and enforced in this State from its origin. The whole body of the common law on the subject of the domestic relations, and especially the relation of baron and feme, except so far as changed and modified by statute, has been adopted among us. As to the second point, the character of the seisin, two observations may be made. 1st. It would be most inconvenient to hold that if A had three hundred acres of land by one grant and settled upon and cultivated a part, his seisin would extend to the whole, but that if he had three hundred acres of land, comprised in four grants adjoining each other, and he settled upon and cultivated apart of it, treating and using it as one entire tract, his seisin, and especially that of his devisee should be limited to the lines of the grant on which he was situated. But bé this as it may, the other observation is that a seisin in law or a constructive seisin of wild or other lands, not adversely possessed, will enable the owner to maintain an action of trespass in this State, is now well settled, and *274 is therefore such a seisin in the wife, whether claiming as heir by devise or deed, as will make the husband tenant by the cur-tesy. ' •
3d. It is argued that the statute of limitations applies in this case and bars the right of the defendants in error, that Jane King, their mother, in whose right they claim, died in 1828, and they did not within three, or within seven years, bring an action, after her death and after their title accrued; that tenancy by the curtesy or other particular estate is not an exception within the statute, and that when the statute has made no. exception, the courts can and will make none.
The argument in its principle would extend to and embrace all particular estates of what kind and description soever, and whether created by deed, by will, or by operation of law, and bar the remainder-man or reversioners, if for seven years they failed to bring suit, if - under none of the disabilities stated in the statute.
It is true those particular estates are not included in any exception of the statute. It would have produced confusion and absurdity to have attempted this, because the benefit of the exceptions contained in the statute is conferred upon those to whom a right has come to sue the tenant in possession and who, therefore, would be barred by the general provisions of the statute, but that they are protected by some of the enumerated disabilities. But no right or title, or cause of action has come, accrued, or fallen to enable a reversioner or remainder-man, before the termination of the particular estate, to sue the tenant in possession; and, thei-efore, the x-eversioner or remainder-man under such circumstances, whether within an exception of the statute or not, is wholly unaffected by the statute. The person barred by the statute is one whose right to enter or bring suit has come or accrued, and who after that event omits and neglects, for the space or term of seven years, to bring such suit. The person protected by the statute is one who- has been in actual possession for the whole term of seven years, claiming adversely against one who has during that whole term had the right to enter or bring suit. Those claiming uixder the disabilities enumerated in the statute have the right and power to' *275 bring suit, but are excused therefrom on account of such disabilities. But a remainder-man or reversioner has no right or power to bring an action; he is not excused therefrom, for he can not do it at all. His omission of it is no neglect; his postponement of it is no laches. His right to an action has not yet accrued. He cannot during the time of the tenant for life lose his estate or be barred of his right by the fault or wrong neglect or laches of the owner of the particular estate. There is nothing in the statute which implies this, but much which implies the contrary. The persons barred by the 1st section of the statute of 1819 are those who shall neglect, for the term of seven years, to avail themselves of their title by suit in law or equity; and the same principle of laches and neglect to sue within seven years after the accrual of a title or right of action, as operating a bar, is found in the second section.
That this reading of our statute is correct on the point before us is shown by several cases on the New York statute. In the case of Jackson vs. Schoonmaker, 4 John, 390, it is said that neither a descent cast nor the statute of limitations will effect a right if a particular estate existed at the time of the desseizin or when the adverse possession began. The same point is held in the case of Jackson vs. Sellick, 8 John. 262, and in the case of Jackson vs. Johnson, 5 Cow. 96, Sutherland, j. says the proviso'was intended to save those who in judgment of law had a reasonable excuse for their delay, and gave to them and their heirs ten years after the disability should be removed, to bring such action, or make such entries as they might have brought or made within the twenty years.
The statute would work great injustice if it were held to effect the rights of reversioners or remainder-men during the continuance of the particular estate. In the same case, C. J. Savage, says: “Before the statute can by any reasonable construction be made to'operate, there must be some laches on the part of those asserting a right of entry; and the policy of the statute gives to every claimant at least ten years within which la-ches shall not be imputed.” The last case referred to is identical in its principal question with the one before this court. It is a case of tenancy by the curtesy outstanding in the husband *276 after the death of the wife, and preventing the heirs of the wife from bringing suit, and the decision and result of the case are strongly in point in the present case. We are of opinion therefore in this case that the statute did not commence running against the heirs of Mrs. King till the determination of the life estate of the husband, Wm. King.
4th. It is insisted that the jury should have been instructed, that they might presume from the length of possession in this case, that the wife had properly conveyed, that her ancestor, the testator, had made a deed, or the State issued an older grant to the defendant below, or to those under whom he claims. We are of opinion that the judge of the circuit court, presiding at the trial; • very properly withheld such instruction. Where the circumstances of the case, the relation of the parties towards each other, or the condition of the title obviate and repel the bar of the statute, we think it would be wrong in principle, and unsupported by precedent, to protect the possession by giving effect to the doctrine of presumption insisted on. It would operate moreover most unjustly. A tenant in dower might alien in fee and live for sixty or seventy years afterwards. The heir could not enter or sue during her life, and the statute would not operate in favor of the alienee until seven years had elapsed after the death of tenant in dower. Yet if the doctrine of presumption was applied to the case, the alienee would have a good title in fee, not by the deed he had taken, but by another presumed in his favor for more than twenty years before the death of the dowress. The truth is, the doctrine of presumption, as well as the bar created by the policy of the statute, is founded upon the principle of laches in him who having the right power and capacity to sue and disturb or recover possession, for along time omits and neglects to do so. This doctrine under such circumstances to secure the repose of society, presumes at length, that he who could and would not sue, had parted with his right. But to presume against him who is unable to sue, whose right of action has not accrued, who has been guilty of no laches, that his title has passed from him or from those under whom he claims, would be au application of the doctrine of presumption as novel, wc ihink, as it would be mischievous. The husband *277 sells the land of the wife and conveys in fee, the coverture continues for fifty years afterwards, the wife survives, she is within the saving of the statute; she brings suit and is told that her title has long since been lost by presumption of a valid conveyance from her. Certainly this could not be tolerated.
5th. It is argued that the husband having only a life estate in the land of the wife, and having conveyed in fee, such a conveyance operated, like an ancient feoffment would at common law under like circumstances, to produce a disseisin of the wife, to make the title of the bargainor, eo imtanti, adverse to hers, to give to her an immediate right of entry, or at least to her heirs after her death; and that, therefore, the statute will bar the heirs at all events within seven years after her death. This court, however, on much consideration held in the case of Miller vs. Miller, (Meigs’ Rep.) that such a consequence does not at this day, and in this State, follow, that such a conveyance is valid to the extent of the interest of the bargainor, and that the wife and her heirs have no right accruing to them to sue till the termination of the particular estate, and may sue within seven years after such termination. We refer to that case, and consider it unnecessary here to report the grounds upon which tl judgment of the court in that case was placed.
6th. As to the question that the defendants in error had lands by descent from William King, and were therefore estopped: the circuit judge gave the proper answer, that the defendants do not claim as heirs at law of the father, but of the mother, and are not therefore estopped by his deed, that the ancient proceeding in warrantia chartce is obsolete, that the modern covenant of warranty is a personal covenant, and gives a remedy at law for damages against the personal representative in the first instance; and that the question at all events did not arise from the title papers and facts shown on the record.
And lastly, as to what was said by the circuit judge on the subject of the duty of the jury in civil cases, to receive and act on the law as expounded to them by the court, we deem it too obviously correct to be drawn even into question or argument, and are of opinion that the animadversion involved in that part *278 of the charge was neither improper nor uncalled for. We affirm the judgment of the circuit court.