#### IN THE

## SUPREME COURT OF ERRORS,

#### HOLDEN AT HARTFORD, IN JUNE, 1810.

----◆----

#### PRESENT,

THE HON. STEPHEN MIX MITCHELL, CHIEF JUDGE,
TAPPING REEVE,
ZEPHANIAH SWIFT,
JOHN TRUMBULL,
WILLIAM EDMOND, } JUDGES.
NATHANIEL SMITH,
JEREMIAH G. BRAINERD,
SIMEON BALDWIN,
JOHN C. SMITH,(a)

----◆----

EBENEZER KING, jun. *against* DANIEL L. COIT.

WRIT of error.

The defendant in error pleaded in abatement, that at the time the writ of error was served, he was a member of the general court of this state, then in session at *Hartford*, and was then actually attending as a member.

The plaintiff in error replied, that said writ issued, and was delivered to the officer who served the same, before the defendant was elected a member of said general court, and was not made returnable until after the termination of the session of said general court.

*The privilege of a member of the general assembly, during the session, from suits, extends to a writ of error, though such writ be not returnable until after the termination of the session.*

*A party entitled to such privilege may avail himself of it, by plea in abatement.*

(a) Appointed in *October*, 1809, in the room of Hon. ROGER GRISWOLD, promoted to the office of Lieutenant Governor.

June, 1810.          To this replication the defendant demurred.

KING
v.                    *Law*, in support of the demurrer, relied upon the pro-
COIT.            visions of the statute,(a) which, he contended, were ex-
                 plicit and decisive.


                      *Peters*, contra, insisted, 1. That a writ of error is
                 not a " *suit*" within the contemplation of the statute, it
                 being in the nature of an *appeal*, and not an original ac-
                 tion; 2. That as the service was not by arrest, but by
                 summons only, and the writ was not returnable until
                 after the session of the legislature, the evil intended to
                 be provided against by the statute, could not take place.
                 The privilege in question is in conflict with the general
                 rights of the citizens, and ought not to be extended be-
                 yond its strict application.


                      J. C. SMITH, J.(b) It is admitted, that the defendant
                 was a member of the general court, and that the writ of
                 error was served upon him during his actual attendance.
                 The language of the statute is too explicit and positive
                 to allow the least latitude of construction. " That no
                 member [of the general court] during the sessions there-
                 of, or in going to or from the said court, be arrested,
                 sued, or imprisoned, or any ways molested, or troubled,
                 or compelled to answer to any suit, bill, plaint, declara-
                 tion, or otherwise, before any other court, judge, or
                 justice, cases of high treason and felony excepted." The
                 member is protected not merely from process that may
                 in any degree restrain or confine him, but from all
                 process whatever of a civil nature. The same privi-
                 lege was anciently claimed by the *English* house of com-
                 mons, and received, at an early period, the sanction of

                      (a) *Stat. Conn.* tit. 42. c. 1 s. 12.

                      (b) At the session of the legislature in *October*, 1809, an act was pass-
                 ed, making it the duty of the judges of the *supreme court of errors* to
                 give their opinions in all matters of law by them decided, publicly and
                 separately.

their courts of justice. It is defined in elementary

writers in terms which must have been copied by the framers of our statute. So sacred was it deemed in the time of Sir *Edward Coke*, that in 4 *Inst.* 24. he says, "Nor shall he [a member] be served with a *subpœna*, citation, or other process, though he be not restrained."

There can be no doubt that the defendant's privilege has been invaded; and I apprehend there is as little doubt that he has chosen a proper method of taking advantage of it. Indeed, some of the provisions of the act could not be enforced in any other way.

A reference to the common-place writers, and the various books of practice, will show, that *privilege generally is pleadable in abatement.* 1 *Com. Dig.* 3. 5. 4 *Com. Dig.* 334. 336. *Tidd's Prac.* 172. 579. 1 *Chit. Plead.* 431. 1 *Stra.* 532. And if in *England* recourse is usually had to a *supersedeas*, the *writ of privilege*, or other specific remedies, rather than to dilatory pleading, it is because the subject of parliamentary privilege has undergone such material changes as to render the latter almost, if not altogether, unnecessary. For it is worthy of remark, that whilst by several successive statutes from 12 *Wm.* III. to 10 *Geo.* III. the boasted *privilege of parliament* is reduced to little more than exemption from personal restraint, our statute remains unaltered, and secures to the members of the general court an inviolability, which has not been enjoyed to the same extent by the *English* house of commons, for more than a century.

Whether the legislature *intended* to provide for cases of this particular description; and, if so, whether it was to be expected any member would avail himself of his privilege against a process like the present, so little calculated to " *molest or trouble him,*" are considerations which may be addressed to the legislature itself, but which can have no influence upon this court.

I am of opinion that the replication is insufficient, and that the writ abate.

In this opinion MITCHELL, Ch. J. SWIFT, TRUMBULL EDMOND, N. SMITH, BRAINERD, and BALDWIN, Js. severally concurred.

REEVE, J. The statute, by reason of which it is contended, that this writ ought to abate, is in the words following: " That no member of the said court, during the sessions thereof, or in going to or from the said court, be arrested, sued, or imprisoned, or any ways molested or troubled, or compelled to answer to any suit, bill, plaint, declaration, or otherwise, before any other court, judge or justice ; cases of high treason and felony excepted." Tit. 42. c. 1. s. 12. I apprehend, that if this privilege should be violated by a suit, it is not a necessary consequence that the writ should abate. It is doubtless a breach of privilege of the house, and will subject the violator to all that punishment which the house can inflict upon a violator of their privileges. So too, as the great object of the law is, to secure the undisturbed attendance of its members, if a member of the general assembly should be arrested, he must be discharged from that arrest. But this by no means puts a period to the suit commenced. There was no injury done to the public ; and surely the law was not made for the defendant. So too, if the suit had been commenced without arrest, by summons ; if he was to answer during the sessions of the general assembly, it would be a breach of privilege of the house, and the suit must be stayed until such time as he could attend. So too, if he had been sued before the time *eundo*, and the time of trial should happen during the session ; though this is no breach of privilege, yet the proceedings ought to be stayed. The grand object to be attained is the undisturbed attendance of the members upon the great concerns of the state. The word " *sued*" is to be understood in this sense only, that a member cannot be compelled *to attend on any suit* during the sessions of the

general assembly. It is immaterial whether the suit be commenced before the time *eundo*, or afterwards. The whole privilege is that of the public, or of the general assembly as their representatives, and has nothing in it personal. That privilege which the member has to be free from arrest *redeundo*, is also the privilege of the public; for unless this was the case, the man who knew that he was liable to arrest would be restrained from going. It was therefore necessary, to secure his attendance, that he should have the liberty *redeundo*. Every thing which is desirable to be attained, is effected by this construction; and no unnecessary impediment is thrown in the way of attaining justice by suit. There can be no conceivable use in granting a personal privilege to a member of the legislature that he shall not be sued, unless that suit will, in some measure, operate so as to prevent his attendance upon the business of his appointment. Therefore it is, that if arrested, he must be discharged ; or if sued before a court which sits during the general assembly, proceedings must be stayed. That this is the doctrine of the books on this subject, I think is undeniable; and I consider our statute as introducing no new law, but that it is in affirmance of the common law. It seems to be almost a literal copy of the language of the common law as laid down by the elementary writers. The same terms are used ; and I think we are bound to give the same construction to those terms as were given to them by the courts of justice of that country at the time that our statute was enacted, unless there are some indications in the statute that they are to have a different effect. It would have been an easy thing for the legislature to have declared, if they so intended, that such proceedings were null and void, or that they should abate; whereas the uniform language of the courts has been, that the process was not void, but that in serving the process a wrong had been committed. The lan-

June, 1810.  guage of the law, as laid down in the books, is, that a
─────        member of parliament shall have privilege for himself,
KING         his servants and goods; and therefore he shall not be
v.           arrested or sued, nor shall he be served with a *subpœna*,
COIT.        citation, or other process, though he be not restrained;
nor shall he be in any way molested ; and it is therefore
a breach of privilege either to arrest or assault a member
of parliament *eundo, morando, vel redeundo*. 4 *Inst.* 24.
*Dew's Journ.* 43. 66.

This language is in all respects as strong as the lan-
guage of our statute; and yet I apprehend it was never
considered as a reason for abating the suit. No plea of
abatement on this account will be found in the books,
although it was a thing which constantly happened ; and
in other cases of privilege, as where attorneys, clerks,
and the like, were privileged from being sued unless in
certain courts, if such privilege were infringed, it was
cause of abatement, or rather it afforded a plea to the
jurisdiction of the court before which they were sued.
The books are full of instances of the party thus sued
availing himself of such a plea.

When a member of parliament was arrested, the an-
cient practice was to obtain a writ of privilege to be
discharged, not from the suit, but from the arrest; and
a *supersedeas* issued to the court to stay proceedings
as long as the privilege of parliament lasted. The com-
mons claimed that to be forty days before and after every
session. *Executors of Skewy's* v. *Chamond*, 1 *Dy*. 69.
*Earl of Athol* v. *Earl of Derby*, 2 *Lev.* 71. A more
summary mode was afterwards introduced of obtaining a
discharge by motion; but it was not from the suit, but
from the arrest; and so it was expressly laid down in
the case of *John Pitt*, Esq. *Com. Rep.* 444. S. C.
*Fortes.* 342. S. C. *Cas. temp. Hardw.* 28. and that it must
be on filing common bail. But this, as appears from the re-
port of the case just cited in 2 *Stra.* 985. was ordered to be
struck out, as it would seem to warrant the arrest in
some measure. The decision in *Strange* did not turn

upon any new law which was enacted subjecting members of parliament where they were not before subjected, but only upon the ground that by the *stat. Wm.* III. there might be a discharge upon motion, without obtaining by writ of privilege a *supersedeas.* In the report of the case in *Cas. temp. Hardw.* we are told expressly, that by the *stat. Wm.* III. the arrest of a member of parliament during privilege was made illegal and irregular, which was not so before that time; and therefore the court discharged him on motion, and compared it to an arrest on *Sunday.* There never was, antecedent to that period, any plea in abatement; but the regular method was, to sue out a writ of privilege, and this was pleaded as a *supersedeas* to the action, and was substantially a plea to the jurisdiction of the court. But this must be a mere temporary stay of proceedings as long as privilege of parliament lasted; for nothing can be clearer than that the court did not consider the arrest of a member of parliament as illegal before the *stat. Wm.* III. Of course, the court before that time had jurisdiction; and, although there might be substantial reasons why the process should be stayed, as long as the public stood in need of his services, and why his person should be protected from arrest *eundo et redeundo;* yet, wherever we find it laid down that a writ of privilege is a *supersedeas* to the action, it must always be understood with this limitation, *as long as that privilege lasts.* The form of the *supersedeas* we find in 4 *Inst.* 24. which shows its nature and extent. The justices are directed, that they supersede their proceedings, where members of parliament are parties, as long as the parliament lasts; which must mean during the session of parliament, and the time subsequent, which is included in the time of privilege.

We find the judges, in the case before alluded to, comparing the law of privilege of parliament to the privilege of parties and witnesses in a suit; and, indeed,

placing it upon the same footing. It will therefore throw light upon the question, if we attend to the law in that respect. The language of the law in those cases is, if a man is summoned to attend the courts of justice in *Westminster*, and is arrested during his attendance upon the court, he shall be discharged, and shall be protected *eundo et redeundo;* but this does not mean a discharge from the suit, but from the arrest. *See Lightfoot* v. *Cameron*, 2 *Bla. Rep.* 1113. A party who had been attending on his cause was arrested in the evening at a tavern; the court discharged him; and afterwards the person so arrested brought an action of false imprisonment against the plaintiff in the former case. *Cameron* v. *Lightfoot*, 2 *Bla. Rep.* 1190. Here the court proceeded upon the ground, that the suit was not discharged in the former case; and, as proof of this, it was urged, that when the court discharged the plaintiff, the suit was not thereby discharged, for he was holden to give common bail. *De Grey*, Ch. J., in pronouncing the opinion of the court, observes, that when a party was entitled to privilege, a *supersedeas* was granted; that the irregularity did not lie in the *process*, but in the *service* of it, and he cites *Co. Entr.* 436. where the party was detained upon six actions, and he was discharged, but was obliged to give bail. The chief justice observes, that the *process* is not void, *for it remains the foundation of subsequent proceedings.* He then proceeds to observe, that instead of the party's procuring a writ of privilege, as formerly, the court now discharges on motion; and adds, the process continues legal, and capable of being executed at a subsequent time, when privilege does not intervene. And in case of a criminal proceeding, where the process could not go on without the personal attendance of the person arrested, although it might be that as an attendant on court he ought to have privilege, yet in that case he would not be discharged from the arrest, although the person arresting would be punished for a contempt. In

the before mentioned case, it is clear, that the court consider a discharge as not discharging the suit, but only the arrest. The language in the case of privilege of parliament, and in the case of privilege of suitors, is the same language. The person arrested is entitled to a discharge on giving common bail. The law in both cases is the same. And as a matter of course, in the case of Col. *Pitt*, as reported in 2 *Stra.* 985. the court directed him to be discharged upon filing common bail. But upon a further investigation of the subject, the court were of opinion, that before the *stat. Wm.* III. the process was legal, and common bail ought to be entered; yet as they now discovered that this statute had rendered the arrest illegal, (with which statute we have nothing to do,) the court directed that the order to enter common bail should be struck out of the order of discharge.

Our statute is in the language of the common law, and ought to be construed in the same manner; and, by the common law, such suit would not abate.

> Judgment that the plaintiff's replication is insufficient, and that the writ abate.