## Case No. 8,616.

### LYELL v. GOODWIN.

### [4 McLean, 29.] [1]

Circuit Court, D. Michigan. June Term, 1845.

ARREST—PERSON PRIVILEGED—REDRESS—SERVICE OF SUMMONS.

1. The mode of redress for a person privileged from arrest, when arrested, is by motion to the court from which the process was issued.

[Cited in Larned v. Griffin, 12 Fed. 591.]

2. A judge, privileged from arrest, when about to set out on his circuit, is not liable to be served with process of summons.

[Cited in Re Kimball, Case No. 7,767; Atchison v. Morris, 11 Fed. 583; Larned v. Griffin. 12 Fed. 592; Nichols v. Horton,14 Fed. 329; Wilson Sewing-Machine Co. v. Wilson, 22 Fed. 804. Cited in brief in Holyoke & South Hadley Falls Ice Co. v. Ambden, 55 Fed. 594.]

[Cited in brief in McIntire v. McIntire, 5 D. C. 349. Cited in Andrews v. Lembeck. 46 Ohio, 41, 18 N. E. 483; Christian v. Williams. 111 Mo. 441. 20 S. W. 98; Cameron v. Roberts (Wis.) 58 N. W. 377.]

[This was an action by James L. Lyell against Daniel Goodwin for trespass on the case. The defendant moved to set aside the writ of summons.]

Mr. McReynolds, for plaintiff.
Mr. Fraser, for defendant.

WILKINS, District Judge. A writ of summons having been issued out of this court, and served upon the defendant, the present motion is made by the defendant "That the writ, and the service thereof, and all proceedings thereon, be set aside, quashed and vacated." The defendant sets forth in his affidavit upon which this motion is founded. the following facts, which are not contested: "That he is now, and for some time has been. one of the justices of the supreme court of this state. That a regular term of said court was. under the provisions of the laws of the state, commenced and held at the city of Detroit, on the first Tuesday of January last past, and which term did not expire until the 27th of March ensuing. That he, the defendant, as one of the justices of the said court, was in attendance upon the said court during and throughout the said term. That the court was in actual session on the 7th of March last. and was adjourned from that day until the 11th of the same month. That on the 20th day of the same month. the deputy marshal of the

United States for this district, came into the room assigned by the state authorities to the justices of the supreme court, and where the sessions of the said court are held; and while the defendant and two other justices of said court were actually engaged in the performance of judicial duties, and served upon the defendant, a writ from this court, commanding the marshal of the district to summon the defendant to appear before this court on the first Monday of April ensuing, (which was the 7th day of April,) to answer unto the plaintiff in this cause, in a plea of trespass on the case, etc., etc. On the day the said writ bears date, viz: the 8th day of March, the defendant was employed in the discharge of his official duties." By the provision of the state law prescribing the duties of the justices of the supreme court of the state of Michigan, the defendant is the presiding judge of the first judicial circuit of said state. The said circuit comprises the counties of Wayne, Monroe, Macomb, St. Clair, Mackinac and Chippewa; in which counties (excepting the counties of Mackinac and Chippewa,) circuit courts are required to be held twice a year by the said presiding judge; the spring term of the Macomb circuit required by law to be held at Mt. Clemens on the first Tuesday of April (which this year was the first day of April) and for the county of Monroe, at the city of Monroe, on the 2d Tuesday of April ensuing, which was the 8th day of April, the day subsequent to the return day of the writ. The city of Monroe is forty miles from Detroit, the present residence of the defendant; and the defendant states in his affidavit, which was made on the 26th of March last, that it was his duty, and he would proceed to the city of Monroe on the 7th of April (the day when he was summoned to appear in this court) to commence and hold the Monroe circuit. It appears then, that the writ of summons in this cause was issued on the 8th of March last, served on the 10th, and made returnable on the first Monday, which was the 7th day of April. And it further appears that the supreme court of the state was in session from the first Tuesday of January until the 28th day of March; and that the Macomb circuit, as required by law, was commenced and held on the Tuesday following the adjournment of the court; and that the Monroe circuit, held at the city of Monroe, forty miles from the city of Detroit, the residence of the defendant, was commenced and held by him on the 8th of April, the day after the return day of the summons from this court, and continued till the commencement of the St. Clair term, on the fourth Tuesday of April. Such are the facts, unquestioned by the plaintiff, and such the provisions of the state laws, regulating the circuit courts of the state, which are courts of record, of general jurisdiction, civil and criminal, and conferring upon and demanding of the circuit judge the exercise of high judicial powers in vacation.

From these circumstances, two points necessarily arise in the case, the defendant having in his motion preferred the claim of privilege. 1st. The regularity of the writ of summons by the marshal, and 2d. To what extent the privilege exempts a justice of the supreme court of the state during its existence.

1st. It being conceded by the plaintiff that the defendant was, and is a justice of the supreme court of the state, and that this writ was served upon him while engaged in the discharge of his judicial duties, and during his actual attendance upon the court, the service must of course be set aside as irregular. The privilege protecting the defendant while engaged in judicial duty, as well from the service of a summons as from arrest, for, although by the service of a summons, the trouble of entering special bail is avoided, yet the summons as well as the capias obliges the defendant to attend the court from which it issues, and exposes the public service to inconvenience and interruption, to prevent which, the protection of privilege in all cases, whether that of parliament, or of jurors, witnesses or suitors, was created by the common law. The privilege is not the privilege of the individual, but of the public, and is granted to guard the legislation of the country and the administration of justice, and it is the duty of courts to give this privilege their constant protection.

But, 2ndly. The privilege to the presiding officer of a court, without whose attendance the court can not be held, is as extensive as to a suitor or witness or juror of the court; and if public policy, which is the reason of the rule, thus protects these officers and parties, with stronger reason should the rule be applied to those public functionaries composing the highest judicial tribunal of the state. This privilege of the court protects jurors, parties and witnesses from the service of civil process eundo, morando, et redeundo, and comprehends protection from arrest by capias, as well as the service of a summons. In other words, the privilege protects them from suit, while necessarily going to, staying at, or returning from the court; private right being suspended in favor of the public good during the period thus comprehended. Such was the well established principle of the common law of England upon this subject, before the statute of 12 & 13 Wm. III. c. 3. For, antecedent to this statute, members of parliament were not only privileged from arrest, but also from being served with any process out of the courts of law, not only during the sitting of the parliament, but also during the recess, within the time of privilege, which was ever liberally construed a reasonable time, eundo et redeundo. It was not within the design of this statute to abridge the common law privilege, which

was enjoyed during the sitting of parliament; but to authorize the commencement of suit, a certain time after the dissolution or prorogation of parliament. The statute directs the manner of bringing the action, viz: by summons or distress infinite to compel a common appearance, but not until after the rising of parliament; and provides—what may be a just construction of the rule in this country—"that the plaintiff is not to be barred by the statute of limitations" in the time consumed by the privilege, but is at liberty to proceed de novo after the cessation of privilege, which, being a public right, enjoyed for the benefit of the public, only so far interferes with private right as to secure the public good, on the termination of which the private right re-commences, unimpaired by the time of privilege, the statute of limitations ceasing to run when privilege commenced. By this statute, as well as by the common law, which it slightly modified, during the session of parliament a suit could not be instituted; and if it had been commenced before, it could not be prosecuted during the session. Under the provisions of the statute, the courts authorized an original to be filed against a member of parliament, in order to prevent him from taking advantage of the statute of limitations, but no process could be issued upon it; and before this statute, this could not have been done at any time after the rising of parliament, during the continuance of privilege. In Pitt's Case, 2 Strange, 987, which occurred during the reign of George II., and to which the statute of William applied, and who was arrested two days after the dissolution of the parliament of which he was a member, and before he had time to settle his private affairs in order to return home, it was held, upon the third point made in that case, that he should be discharged from the suit upon motion, the institution of the suit within the time of privilege being a breach of the privilege of parliament. All the judges were of opinion that he should be discharged on motion,. except two—the chief baron at first intimating a doubt, but subsequently ordering the entry of common bail to be stricken out, and the party discharged. And the principal question was, whether he should be discharged on common bail, or discharged altogether? It being after the dissolution of parliament, the plaintiff had a right to commence a suit under the statute, and therefore there was a doubt whether he should not be discharged from the arrest, on common bail, and the proceedings against him continued. But the judges held that they would not countenance the infraction of the privilege, and therefore discharged him entirely. Mr. Justice Blackstone, who published his Commentaries in 1765, after this decision, observes, "neither can any member of either house be arrested, or taken into custody, or served with any process, without a breach of the privilege of parliament." So that the law, as it stood in

England before St. Wm. III., or since, extended the privilege to an exemption from arrest, or the service of civil process, during the time covered by the privilege.

In a recent case in the queen's bench—that of Cassidy v. Steuart [2 Scott, N. R. 432] 4C E. C. L. 464, which fully adopts the ruling in Pitt's Case [supra]—it was held, that a ca. sa. issued against a member of parliament, although with a direction to be returned non est inventus, and with the avowed object of continuing the proceedings of the original suit, and not to molest the defendant with an arrest, was irregular, and that the proceeding should be set aside. Bosanquet, J., observing: "Formerly (before St. 12 & 13 Wm. III. c. 3) the privilege was exemption from being sued. Exemption from arrest is recognized in various acts of parliament. The arrest, therefore, would be an illegal act. But if the thing ordered to be done be illegal, the order must also be illegal. But the writ commands the sheriff to do an act, which act, if done by the officer, in obedience to the writ, would be a violation of the privilege, and would throw upon the defendant the trouble and expense of obtaining that discharge to which his privilege entitles him." The same reasoning applies with equal force to a writ of summons issued during the existence of the privilege under the common law. For the latter writ commands an officer of the court to do an illegal act, namely, a breach of privilege, and where the privilege is exemption from the service of a summons as well as from an arrest, the order to infract it, is as irregular as the obedience of the order itself in the actual service. The doctrine of privilege is not peculiar to the common law of England, nor does it spring from the peculiar system of kings, lords and commons. It is as ancient as Edward the Confessor, and is consistent with, nay, necessary to the universal equality established in a republic. It is inseparably connected with the fundamental maxim in all free governments, that where the public exigency renders it necessary, for common preservation, private right shall yield to public good. It has been recognized and adopted in its fullest extent in the courts of the United States, and in several of the states of this Union.

In Hurst's Case [Case No. 6,924], decided in the circuit court of the United States for the district of Pennsylvania, Judges Washington and Peters both held, that the privilege protected a witness at his lodgings while under subpoena, and directed his discharge. The motion was made for his discharge from arrest under a ca. sa., the judgment having been rendered before he was subpoenaed as a witness. In Gyer v. Irwin, 4 Dall. [4 U. S.] 107, decided in 1790, the court held, that the privilege extended to arrest, summons, citation, or other civil process, during the necessary attendance to the public business. In Hayes v. Shields [2 Yeates, 222], a suitor was

p.ivileged from being sued by summons while attending to his cause in court, and eundo et redeundo. In this case the cause had been tried, and a day had intervened after the delivery of the verdict, when he was served with process, and the court very properly held that they would not nicely scan the time of the return of witnesses, parties, etc., etc., and that the exemption from suit claimed by the party, was the privilege of the court, and not the privilege of the party. The plaintiff in this cause endeavored to establish a distinction between writs of summons and capias; which the court held not to be solid, observing that the party's attention to his own business in court, is distracted by other objects, and he is not to be subjected to that inconvenience which would be contrary to the wise indulgence of the law. The defendant was, on motion, discharged from the action. This case occurred in 1797, in Pennsylvania. The motion was made by Ross, whose legal eminence was co-extensive with the Union in his day; and the decision pronounced by Addison, J., as profound a lawyer and as honest a man as ever adorned the bench of this country or of England. Were it a modern Pennsylvania decision, I should probably hesitate to give that weight to it, to which its intrinsic merits entitle it, inasmuch as it is now the common parlance of the bar to treat with levity at least, the modern decisions of both New York and Pennsylvania. But it is not merely Pennsylvania law, but the common-law of England, maintained, and enforced. In the argument of the counsel, and the opinion of the judge, we find cited Pitt's Case from Strange, and the common law from its ancient expounders. In Bolton v. Martin, 1 Dall. [1 U. S.] 296, the defendant, who was a member of the state convention in 1788, was served with a summons. Sargeant—so celebrated as a jurist and a statesman—moved to quash the process, upon his mere suggestion, as an officer of the court, that the defendant was acting in a public capacity, as a member of a legislative body, and was entitled to his privilege. The motion was sustained by Justice Shippen, and the defendant discharged from the action. In this case, the attorney general of the state appeared in support of the motion, the privilege being considered a public right; and the whole common law doctrine of privilege was fully sustained, the court reviewing the history of privilege, and placing it on the true ground, not of exclusive favor to an individual, but of public good. And in 1803, when the supreme court of that state was filled with eminent and profound jurists, it was held (in Miles v. McCullough, 1 Bin. 77) that a suitor attending an appeal from the court of another county, was privileged from a summons, and discharged from the suit, on motion. And still more recently, in 1822, in the case of U. S. v. Edme, where a witness attending before a magistrate to give his deposition under a rule of court, was arrested on a capias on his return home from the magistrate's office, under a writ from the district court of the United States, in a suit for the recovery of the penalties of an official bond, the supreme court of Pennsylvania discharged him from the arrest, after he had given bail to the marshal, and where the application was made to the court not by the party himself, who was absent, but by his bail, the court holding that the privilege protected the witness from suit, while attending under subpoena, and for a reasonable time in returning home; and he was discharged without the entry of common bail. This case is to be found in 9 Serg. & R. 150, and is valuable, not only for the point decided, but for the eloquent exposition, by Mr. Justice Duncan, of the right of privilege, and the constitutional boundaries of the federal and state jurisdiction. And but a few years ago, in 1836, the district court in Philadelphia, in the case of Wetherill v. Seitzinger, discharged the defendant from a summons, (which is tantamount to the dismissal of the suit), he being a suitor in another county, and having come into Philadelphia to attend to the taking of a deposition in the pending suit, although the taking of the deposition had been adjourned, and he was about to return. 1 Miles, 237. Although this decision goes greater length than any prior English or American case, yet it exhibits the spirit, that courts will not be deterred from a liberal construction of the privilege of the public, by the allegation of private loss or inconvenience. Nor is the extension of the privilege, in this case, more an invasion of private right, than that in the case of Cole v. Hawkins (in the court of king's bench) And. 275, where merely serving process upon a party attending to his cause in court and while he was upon the steps leading into the court, was held a great contempt of court, punishable by attachment, and the court compelling the attorney, who purged himself of the contempt by declaring that he had served the writ through mere inadvertence, to pay the costs—and discharging the defendant. If the Philadelphia decision in 1836 is calculated to alarm, in its extension of privilege, how much more this adjudication of the court of king's bench, in England, in 1738—a century previous. Both cases deem the infraction of the privilege a public wrong, and as such, punishable by the court against whose jurisdiction the wrong was committed, and whose process was abused.

The courts of New Jersey and Connecticut have followed in the Pennsylvania path, or rather, fearlessly proclaimed the common law doctrine upon the subject of privilege, recognizing no distinction between a capias and a summons, and considering the privilege as the privilege of the court, protecting the administration of justice from interruption and delay. Such is Halsey v. Stewart, 4 N. J. Law, 366, where the decision is pronounced by Justice Southard, of the supreme court of the state,

recognizing and adopting the Pennsylvania decisions in Dallas; and Cole v. Hawkins, in And. 275. Such is Harris v. Grantham, 1 Coxe [1 N. J. Law] 142; and King v. Coit, 4 Day, 129—where it was held by the supreme court of Connecticut, in 1810, that the party entitled to the privilege might avail himself of it, by a plea abating the writ, which is all the present motion under consideration calls for. Though this decision is based upon a local statute, and so referred to by Judge Smith, who gave the opinion of the court, yet the language of the statute is recited in the opinion, and but repeats the common law provision, "that the party is not to be molested by suit during the sessions of, or going to, or returning from, the general court." The court had no doubt but that the writ of error served upon the defendant, was an invasion of his privilege, as a member of the court, and that he had chosen the proper method to take advantage of his privilege, and ordered that the writ abate. Such, also, has been the character of the decisions of the supreme court of the late territory of Michigan, in Woodbridge v. Cook [unreported], decided in 1833, where the defendant was served with a summons while preparing to leave home to attend to his duties as a judge of the supreme court on a distant circuit. The judgment recovered against him in a suit thus irregularly commenced, was reversed on error—and this court has repeatedly recognized the same principle in relation to members of the state legislature, allowing the privilege when plead, and sustaining the demurrer in a suit commenced by Narr, where the privilege was set forth. In Massachusetts the same principle has been recognized, and to the same extent. In the Case of McNeil, 6 Mass. 245, 246, it was decided by the supreme court of the state, that a suitor to an action pending in court, and during the discussion of a mere question of law by his counsel, could not be arrested on a ca. sa. issued on a judgment previously obtained against him in another cause; the court holding that his privilege protected him while "his action was discussing," and ordered him to be discharged. In all the states of the Union, where the question has arisen, the doctrine of the common law has been fully maintained, unless altered and modified by local statute. In New York, a cursory examination of their reports would lead to a contrary impression: but I find that the principle is fully recognized.

In the Case of Livingston, in 8 Johns. 270, the supreme court declined interference with an inferior tribunal by mandamus, commanding the court of common pleas of a county to proceed in a case against the judge of the court, intimating that a judge is not liable to be proceeded against, except by bill in his own court. In the case of Secor v. Bell, 18 Johns. 52, the question arose in a collateral action of debt brought against the sheriff for an escape of an attorney of the court, who had been taken in an execution at the suit of the plaintiffs; and had produced to the sheriff a writ of privilege, upon which the sheriff discharged him from custody, and returned the execution accordingly. Chief Justice Spencer decided that the sheriff had no authority to discharge the attorney, because it was not his province, as a ministerial officer of the court, to take notice of the privilege of an attorney, and that the proper mode to apply the protection of the privilege, was by motion in court to discharge him on an affidavit of the facts. And as, by the Revised Statutes of that state, counsellors, attorneys and solicitors are made liable to arrest on mesne process, and to be held to bail as other persons, the intimation of the judge, that the motion must be to discharge on common bail, depended upon the local statute of the state; Judge Spencer recognizing the common law rule by his citation of authority, and consequently the principle in Col. Pitt's Case, which exempted jurors, and witnesses, and parties from arrest, and other civil process and defined the proper mode to be a motion to discharge altogether, and not the writ of privilege.

It is needless to cull from the numerous authorities, other cases; sufficient have already been referred to, to establish these propositions as the common law of England, and the law in the various states of the Union.

1. The privilege extends to suitors, witnesses, jurors and officers, and consequently to the presiding officers of the courts of justice; and protects them, while in attendance upon their public duties from arrest, summons, or any other civil process.

2. When the privilege is invaded, the proper mode of redress is by motion in the court from which the process issued, to set aside the service, and discharge the party, where privilege has been invaded; or, in other words, to abate the writ.

Apply these principles to the case under consideration. By provision of the state law, known to the counsel of the plaintiff, who took out the writ, the supreme court, of which he was an attorney, met on the first Tuesday of January last. It did not rise until Friday, the 28th of March. By another provision of the state law, the justices of the supreme court are the presiding judges of certain designated circuits; the defendant, Judge Goodwin, being the presiding judge of the 1st circuit, and required by law to commence the Macomb circuit on the first Tuesday in April; affording him this year but two legal days from the close of the supreme court, to prepare for and go to that circuit, and by law also required to attend in succession the Monroe and St. Clair circuits, commencing at Monroe on the second Tuesday of April. The writ of summons commanded the marshal to summon the defendant, Judge Goodwin, to be and appear in this court on the first Monday of

April, to answer the plaintiff; and the law of the state commanded his presence, forty miles from this city, on the day after. He must necessarily obey the law of the state; and his judicial privilege—the same as that which would protect the humblest suitor in the court—protected him from obedience to the summons. The writ was taken out by an officer of this court, who was also a practitioner in the supreme court while that court was in session, and made returnable on a day when the defendant was necessarily engaged in going to a court some forty miles distant from his residence. It was served upon the defendant on the 10th of March, while actually engaged in his official duties, and returned on the same day. Now, at what period of time from the commencement of the supreme court, in January, to the adjournment of the St. Clair circuit, two weeks after the return day of the writ, did the privilege of the judge cease to protect him from process? Certainly not the 29th and 31st of March, both of which days, according to the reasonable time allowed in Col. Pitt's Case, and the case in Yeates, was little enough for preparation to go, and actual going to the Macomb circuit. And from that time onward, to the close of the St. Clair term, in the beginning of May, there was not a day in which his privilege did not clearly and fully protect him from the service of the writ; and, therefore, the service was illegal, and consequently it was an abuse of the process of this court, to take out a writ commanding the marshal to do an illegal act; an act, which from the known provisions of the state law, must be illegal within the time in which it was commanded to be done, and therefore, this writ must be quashed. This privilege is not exclusive, but general; and is not appropriately obnoxious to condemnation, as invasive of private right. It is an ample shield, covering alike the suitor and the witness, the juror and the judge, and protecting from impediment the administration of justice between man and man. More especially is it essential, that the judicial functionary should be thus defended. For the time being, while engaged in the public service, he is divested of self and of private concernment, and, as it were, dedicated in time and mind to the public service. Nor need there be private injury as a necessary consequence. There may be a time, when the privilege of these functionaries ceases,—when the special duty, that sets them apart to the public service has been performed, and their return to private life is clear and unquestioned, when the public interest no longer demands their protection, and the private right to their attention can commence, and they be held answerable as any other citizen.

3. In regard to the question of jurisdiction, it is unnecessary to pronounce an opinion, as that question will come up in other cases now pending, and this writ is quashed on the

ground already considered. But, it may be well observed, that since the argument, I have directed an examination by the clerk of the cases instituted since the organization of this court, and the great majority of them state the citizenship of the parties in the original writ, and the few that omit this important allegation are of recent date. By this writ, we are not informed of the character of either plaintiff or defendant. By the affidavits on file, it appears that the defendant is a judge of the highest court in the state, and the plaintiff an inhabitant of the city of Detroit. Now, the judicial act of 1789 [1 Stat. 73] limits the jurisdiction of the courts of the United States to suits between a citizen of the state where the suit is brought, and a citizen of another state, and to cases where an alien is a party; and, to maintain a suit in the circuit court of the United States, "the jurisdiction must appear on the record." This does not appear on the record, as yet, in this cause, and the presumption is, that a cause is without the jurisdiction of the court, until the contrary appears; and, did the quashing of this writ depend solely upon this ground, I would enter more fully into the investigation of the question, notwithstanding the remark of Mr. Justice Taney, in [Bradstreet v. Thomas] 12 Pet. [37 U. S.] 64, "that the proper place for the averment in a writ of right is, the declaration." Was this court asked to discharge a defendant on a writ or a capias, where the writ did not disclose the jurisdiction, or the plaintiff's right to the process, it would not be insisted on, that the defendant must patiently await the plaintiff's pleasure to aver the jurisdiction of the court in his declaration. The court direct the writ of summons in the above cause, and the service thereof, and all proceedings thereon, to be set aside and vacated, and the defendant discharged.

[For further proceedings in this action, see Case No. 8,617.]