McKinney, J.
delivered the opinion of the court.
This bill is brought to enjoin the defendant from committing waste upon a tract of land, in which the complainant alleges he has a vested remainder or reversion in fee. From the pleadings and proof in the cause, the following facts appear. On the 7th day of March, 1786, a grant issued from the State of North Carolina to Henry Winborne for the tract of land in dispute, lying in Rutherford county, Tennessee; and containing three hundred and eighteen acres. Winborne, the grantee, died in North Carolina about the year 1795, intestate, leaving Elizabeth Winborne, his only child and heir at law, surviving. In April, 1808, said Elizabeth Winborne intermarried with J ohn Guión, at about the age of sixteen years; and *321 in February, 1809, gave birth to the complainant, who was the only issue of said marriage. On the 10th day of January, 1815, said Elizabeth Guión died, her husband surviving, who is still alive. The grantee never took possession of said tract of land; nor was possession thereof ever taken by said Elizabeth, either before or after her marriage; neither did said John Guión ever take possession of, or exercise any acts of ownership over, or set up claims as tenant by the curtesy, or otherwise, to said land; it remained wholly uncultivated and vacant from the date of the grant to the year 1809.
It appears that one Hardy Murfree, at an early day, claimed to have purchased said tract of land from Winborne, the grantee, previous to the issuance of the grant; and the copy of an informal conveyance is set forth in the record as the evidence of such purchase. It further appears that in the year 1809, said Murfree took actual possession of a small part of said tract of land, and held the same until his death, which happened not long afterwards. After the death of said Murfree, (who died intestate,) and in the year 1813, his heirs at law presented their petition to the county court of Williamson county, for partition of his real estate, of which they claimed said tract of land as forming part. In pursuance thereof,, commissioners were appointed, who made partition accordingly; and at the January session, 1814, their proceedings were returned to said court, and were recorded in the manner prescribed by law. In the foregoing division, the tract of land in dispute was allotted to Lavinia B. Murfree, daughter of Hardy Murfree, who intermarried" with F. N. W. Burton. On the 1st day of January, 1815, and in the lifetime of said Elizabeth Guión, said Burton, in right of his wife, and in virtue of the aforesaid partition, took possession of said tract of land and held the same, adversely, until the 17th day of September, 1829, when he and his wife joined in a conveyance thereof to the defendant, Anderson, who has continued the *322 possession ever since in opposition to the claims of ail other persons.
Two actions of ejectment have been prosecuted by the complainant for the recovery of said tract of land, commenced in the year 1831, against the defendant and others, in both of which he failed, on the ground that having set up claim thereto as heir of his grandfather, Henry Winborne, the statute of limitations, which commenced running against his mother, Elizabeth Guión, in her lifetime, barred his right of recovery. He now brings this bill, in which it is assumed that his father,John Guión, who is still living, is tenant by the curtesy of said land: and as such, has a life estate therein, and that, until the termination of the life estate, he has no right of action to sue for or recover the same; and that in this trial the statute of limitations can have no effect or operation upon his rights. The bill charges that the plaintiff is committing waste by the destruction of timber and otherwise, whereby his interest in remainder will be greatly injured and lessened in value. The defendant in his answer admits the waste as charged in the-bill, but claims that he is the absolute owner in fee of said tract of land. He denies that said John Guión is, or ever claimed to be tenant by the curtesy, of said land. He likewise denies that the complainant has any interest or estate therein in reversion, remainder, or otherwise.
The relief sought by the bill is resisted upon several grounds; 1st. It is insisted, that John Guión had no estate by the curtesy in the land in- controversy, because his wife had not at any time, either before, or during the coverture seizin in deed, or actual possession thereof. It is argued that the common law upon this subject remains in force in this state; that here, as in England, there are four requisites to an estate in curtesy, viz. marriage, actual seizin of the wife, issue capable of inheriting the estate, and death of the wife; and that these several requisites are alike necessary and indispensable; that Elizabeth *323 Nuion, upon whom the title was cast by descent, on the death of her father, intestate, had, until actual entry upon the land, only a seizin in law, which was insufficient either to transmit the inheritence to her heir, or to constitute her husband tenant by the curtesy.
It is true, that by the common law, in descents of land which are cast upon the heir by the act of law itself, the heir has not plenum dominium, or full and complete ownership until he has made an actual entry upon the lands; and if he die before entry, his heir will not be entitled to take possession, but the estate will go to the heir of the person last seized; 2 Bl. Com. 312. This distinction between seizin in law and seizin in deed, it will be observed, applies only to cases where an entry Is necessary to complete the title; therefore, in England, when lands are conveyed by deed, or assurance, to which effect is given by the statute of uses, it is said by Blackstone, 2 Com. 238, the party is at once put into corporal possession of the ■land, without ever having seen it, by a kind of parliamentary magic. And our statute of descents of 1784, ch. 22, has been construed to have the same operation and effect — it transmits ■any “rights, title, or interest of the person dying intestate in and to any estate, or inheritance of land, to the heir, regardless of whether the ancestor were seized thereof in law, or in deed; and vests the heir, without entry, with as full and complete ownership of the land thus descended, as in England? after actual entry upon the land.” See Meigs R. 565.
But, aside from the effect given to this statute, it has been held in this state, and in several of the other states of this Union, that this rule of the common law must be taken with ■such construction and qualification as the actual state and condition of a large portion of the lands in this country absolutely requires. Indeed, as said in the case of Jackson vs. Johnson, 5 Cow. 97, it has not been adhered to in its literal ¡strictness, either in England or in this country. See 3 Atk. *324 469, 1 Cruise’s Dig. 110, 11, 12. A rigid application of the rule, according to its letter, would in many cases defeat and utterly extinguish the title of tenant by the curtesy. In the case of McCorry vs. King’s heirs, it is said, “that a seizin in law, or a constructive seizin, of wild or other lands, adversely possessed, will enable the owner to maintain trespass, is now well settled; and is, therefore such a seizin in the wife, whether claiming as heir, by devise, or by deed, as will make the husband tenant by the curtesy.” 3 Hum. 267. See also 4 Kent’s Com. 29, and cases there cited. The title, in judgment of law, draws to it the possession; and this constructive possession will continue until an actual adverse possession is clearly established. This does not dispense with, nor is it a departure from the substance or spirit of the common law rule; although the feudal reason upon which the rule is supposed to have been founded, has no application to this country.
We are of opinion, therefore, that Elizabeth Guión had such a constructive seizin in deed of the tract of land in controversy, during the coverture, as was sufficient, upon her death, to constitute her husband a tenant by the curtesy; and as would have entitled him to enter upon said land, at any time before the statute of limitations barred his right.
2. It is argued, that the complainant can have no relief in this case; because the right to the land, in remainder or reversion, set up in the bill, is barred by the statute of limitations, as is also the right of John Guión, as tenant by the curtesy.
The facts material to this point, are, that Burton claiming the tract of land in right of his wife, under the decree of partition, on the 1st of January, 1815, took possession of the land in controversy, in the lifetime of Elizabeth Guión, and dui’ing the coverture, there having been a previous possession from the year 1809, under an informal conveyance from the grantee to Hardy Murfree, the possession of Burton was of the entire *325 tract, in exclusion of, and adverse to all other persons; under an assurance of title vesting the absolute fee simple interest in his wife, and such exclusive adverse possession has been continued, witlioufinterruption, to the present time. Upon thse facts the question arises, whether or not the complainant’s right in reversion, or remainder, is barred by the statute of limitations? We think it is. It is certainly true, as argued by the counsel of complainant, that if an estate by the curte-sy existed, and vested in John Guión at the time of the dissei-zin by Burton, the statute of limitations could not in any manner effect the rights of the complainant, so long as such estate continued to exist; because, during the continuance of the particular estate, the complainant could have no right of entry, or suit; and the statute only bars such persons as neglect to sue for the space of seven years after the right to enter, or bring suit, has occurred. But did an estate by the curtesy exist in John Guión at the time when the adverse possession of the land in controversy commenced? Certainly not. In the language of the books, the estate is initate on issue born; and consummate on the death of the wife. It cannot by possibility exist during the life of the wife; and may be defeated by alienation or death of the husband in her lifetime. At the time of the disseizin in this case, it was entirely contingent and uncertain whether the interest of John Guión would continue beyond the coverture. He was not then seized of a particular interest or estate separate from the fee simple estate in his wife. By mari’iage, the husband gains an estate of freehold in the inheritance of his wife, in her right, which may continue during their joint lives; and may, by possibility, last during his own life. He is not, however, solely seized, but jointly with his wife. The technical phraseology of the common law-pleaders, to express the interest of the husband in the estate of his wife is, “that husband and wife are jointly seized in right *326 of the -wife,” Douglas, 329. If there be a disseizin during coverture, it is a disseizin of the entire joint estate, and they must jointly bring suit to recover the possession. The statute of limitations, in such case, will begin to run against both husband and wife, from the time of the adverse entry; and if suit may be not brought within the period required to form the bar of the statute, their joint right of action to recover the possession wall be barred. This question is not now presented for the first time; it arose in a case at Jackson two years ago, as I learn from my brother judges. In that case, which is not reported, it was held, upon much consideration, that a joint action by husband and wife, to recover the lands of the wife, of Which there had been a joint disseizin, was barred by seven years adverse possession. It cannot, we think, be held otherwise; because, the statute begins to run from the time when adverse possession commenced, against married women, in like manner as against persons free from disability; and they would be barred within the same period, but for the proviso, which declares, that they, or their heirs, shall or may have the right to bring suit within three years next after their coverture shall cease, but at no time thereafter. And when the statute attaches and commences running, no cumulative disability, or other event, can arrest, or suspend its operation.
It follows therefore, in this case, first, that the joint right of action against Guión and wife, (had the coverture continued) would have been barred at the expiration of seven years from the adverse entry by Burton on the 1st of January, 1815; second, that, (the wife having died shortly after the disseisin) the right of John Guion, whatever it may have been, was barred within the same period; and not only barred, but absolutely extinguished under the 1st section of the act of 1819, ch. 28; because the adverse possession of Burton, was by virtue of an “assurance, purporting to convey an estate in fee simple,” which, after seven years enjoyment, has the effect of vesting *327 an indefeasible title in fee simple in himself and wife; third, that upon the death of Elizabeth Guión, the complainant, who, as her heir, succeeded to the inheritance had only three years thereafter, within which to bring suit. And that, although an infant at the time, he was bound to sue in order to save the bar; because, he is not within any exception of the statute; but is expressly excluded by the provision; that no cumulative disability shall prevent the bar; but shall apply only to such disability as “existed when the right to sue first occurred, and no other.” The word “death” in the statute obviously means, that when the right to sue first accrues to a person who, at the time, is under any of the disabilities mentioned in the proviso; and who dies during such disability, the heir of such person shall have three years after the death of his ancestor, within which to bring suit; and if he fails to do so, he is forever barred. The complainant in this case, although an infant, might have sued at any time after the right of John Guión was barred; the extinguished interest which had previously vested in John Guión, could have interposed no obstacle to his recovery.
The principles announced by this court in the case of McCorry vs. King’s heirs, 3 Hum. 267, to which we are referred by the complainant’s counsel, will be found to have no application to the case under consideration. In that case the husband made a conveyance of the lands of the wife — she not joining therein. And it was held that such conveyance was valid to the extent of the husband’s interest, and vested his life estate by the curtesy in his vendee. There the husband by his deed had estopped himself from sueing, and the wife could not sue alone; nor could her heirs, after her death, sue the husband’s vendee, during the continuance of the life estate; they were likewise estopped by the husband’s conveyance; and therefore, it was held very properly, that, as they had no light of entry, or suit, until after the termination of the particular *328 estate, the statute of limitation did not apply. And for another reason of equal force, the statute could not apply in that case. The possession of the tenant for life was in contemplation of law, the possession of the remainder man. The particular estate and the remainder, constitute one and the same estate in law. The remainder man is seised of his remainder, at the same time that tenant of the particular estate is possessed of his estate. The possession of the husband’s vendee, therefore, in the case referred to, was consistent with, and subordinate to the right of the heir’s of the wife; was held under the same title, and, in law, could not be adverse thereto.
In this view of the case, it is unnecessary to discuss the question, as to the jurisdiction of a court of chancery to restrain the commission of waste, upon the case made in the bill; as we are of opinion the complainant has no title to the tract of land in controversy.
The decree of the chancellor, will, therefore, be reversed, and the bill dismissed with costs.